## MIRACLE v. BARKER ET UX.

(No. 2238; May 4, 1943; 136 Pac. (2d) 678)

For the appellant the cause was submitted upon the brief of *Bryant S. Cromer,* of Casper.

(There was no brief for respondents.)

BLUME, Justice.

This is an action brought by F. E. Miracle, assignee of T. Leon Howard and John N. Lipscomb, surgeons, to recover from the defendants Lewis Barker and Ida Barker, his wife, a balance of $250 claimed to be due on an account and the interest thereon. The petition alleges that the defendants are husband and wife; that Dr. Howard and Dr. Lipscomb are duly licensed physicians and surgeons in the State of Colorado; that on or about October 12, 1930, and on or about October 18, 1930, Drs. Howard and Lipscomb performed professional services for the defendant Lewis Barker, at his special instance and request and upon his express promise to pay for the same. The petition then sets out the account, claiming for an operation performed October 12, 1930, the sum of four hundred dollars, and for an operation performed October 18, 1930, the sum of three hundred and fifty dollars, and giving credit as follows: February 5, 1931, $200; June 22, 1931, $250; June 21, 1934, $50; a total of $500 paid. The petition then alleges the transfer of the account to the plaintiff herein and prays judgment for the balance. The defendants answered, admitting that they were husband and wife, and that the plaintiff's assignors performed the operation upon the defendant Lewis Barker. They denied that the professional services were of the reasonable value of $750, and allege that they are not worth to exceed $500, and that they have paid that sum. The case was tried to the court without a jury, and

judgment was entered for the defendants, from which judgment the plaintiff has appealed.

Dr. Howard testified at length as to the services performed by him for the defendant Lewis Barker, namely, a prostatectomy, and he and Dr. Lipscomb both testified that the reasonable value of the services is the sum of $750. Dr. Rhea and Dr. Stuckenhoff, of Casper, Wyoming, testified that the reasonable value of the services performed was from $250 to $500. In the course of the trial Lewis Barker was asked as to some conversations which he had with Dr. Kamp, now deceased, who was his physician at Casper, Wyoming, and who took him to Denver to see Dr. Howard. Four assignments of error relate to the admission of the testimony as to these conversations. The main portions of the record relating to these conversations are as follows:

"Q. Now you may state what he (Dr. Kamp) told you with reference to the charge Dr. Howard would make.

Mr. Cromer: That is objected to as incompetent, irrelevant and immaterial, calling for hearsay testimony.

The Court: I am not quite sure about that. I will hear the testimony and pass upon it later.

A. After we got to the hospital, Mercy Hospital, the doctor says to me, 'Your bill will be $500 for the doctor, but you will have to pay all the nurses and hospital bills, the anaesthetic, if there is any bills to yourself besides that, but the doctor's bill will be $500.' * * * Q. Now I will ask you if at a later time and before you paid the balance of the $500 you had a further conversation with Dr. Kamp with reference to this bill? A. Yes, sir. Q. You may tell the court about when that was? A. That was about 1934. It was after I paid the $500, and then I got another statement wanting the balance. I took it up with Dr. Kamp.

Mr. Cromer: May we have, without interrupting the examination, an objection to all of the testimony in

which the witness will testify to what Dr. Kamp said?

The Court: Yes, sir, you may have an objection and exception to all of that. * * *

Q. Then I take it it was after June 1, 1934, when you paid the $50 that made the total of $500. A. Yes.
Q. How long after that? A. I think a year after that. It was, I think, a year after that I told the doctor and asked him if he would write Dr. Howard and he told me he would, and he said I wouldn't pay him any more either, because that is what he agreed to do it for."

As stated before, the case was tried to the court without a jury, and the rule is that in such case the erroneous admission of testimony is not ordinarily ground for a reversal, if there is competent evidence aside from that to sustain the judgment. Williams v. Yokum, 37 Wyo. 432, 263 Pac. 607 and cases cited; Alaska Development Company v. Brannan, 40 Wyo. 106, 119, 275 Pac. 115; Yount v. Strickland, 17 Wyo. 526, 533, 101 P. 942. That appears to be the general rule. 5 C. J. S. 997. In 26 R. C. L. 1085, the rule is stated thus: "It is the general rule that error will not lie for the admission of irrelevant and incompetent evidence in a case tried before the court without a jury, at least where it does not appear that the court relied on the incompetent evidence in making its decree." The rule as thus stated was approved in Morton Realty Company v. Irrigation & Mining Co., 37 Ida. 311, 218 Pac. 438. In Stone v. Spencer, 79 Okl. 85, 191 Pac. 197, it is stated that a judgment rendered in a case heard without the intervention of a jury may not be reversed on account of the admission of incompetent evidence unless the record discloses that there was no competent evidence to support it or in some other way shows affirmatively that the improper evidence affected the result." In Lawther Grain Co. v. Winneford, (Tex. Comm. App.) 249 S. W. 195, 198, the court stated.

"The judgment of the trial court should not be disturbed unless there be a showing that it was erroneous.

In accordance with this rule it has been repeatedly held that the mere fact that improper evidence has been adduced need not require reversal where the trial was to the court. There must be some showing that the improper evidence affected the decision."

In the case of George v. Odenthal, 58 N. D. 209, 225 N. W. 323, it was said as follows:

"The case was tried to the court without a jury. Without reciting these rulings in detail, it is enough to say that certain evidence was received over the defendant's objection. Conceding that these objections were good and the evidence not properly admissible, nevertheless it will be presumed that such evidence so received was not considered by the court in making his findings and conclusions, unless such inadmissible evidence was so essential that the court's findings could not have been made without it."

It cannot, we think, be said that it affirmatively appears in this case that the evidence objected to influenced the court in reaching its conclusion. The testimony tended to show that the services in question were performed in accordance with an express contract fixing the amount. But that was not an issue in the case. While the petition alleges that the defendant Barker expressly promised to pay, that promise was to pay for the services performed, and there is no allegation that the amount for the services was fixed by any express contract. The petition does not allege that $750 was the reasonable value of the services, and it was therefore defective, but may be considered amended, since the case was tried on the theory as to what was the reasonable value of the services. The answer of the defendants alleged that the fee of $750 was excessive, and that the reasonable value of the services was not to exceed $500. It is held that in an action upon a quantum meruit plaintiff establishes his prima facie case to recover when he introduces evidence of the reasonable value of the services performed, and that if the

defendant contends that an express contract was made fixing the value he must plead and prove that fact. 48 C. J. 1171; Pitman v. Lemaster, 128 S. C. 98, 121 S. E. 677; Mansfield v. Mallory, 140 Ia. 206, 118 N. W. 290. There was no pleading on the part of the defendants to that effect, and hence, as stated before, the existence of an express contract fixing the value was not an issue in the case, and it was accordingly immaterial and irrelevant. In view of that fact it can hardly be assumed that the court erroneously thought that the question of such contract was in issue. It was held in Uppfalt v. Nelson, 18 Nebr. 533, 26 N. W. 362, that in such a case, though the introduction of evidence was overruled by the trial court, it must be presumed that its final consideration was refused.

Moreover, the court admitted the testimony to the first conversation over objection, stating that it would pass on the admissibility thereof later. No objection to that course was offered. The situation with reference to the objection and ruling as to the second conversation with Dr. Kamp is not altogether clear. But it seems probable that the court and the parties understood that a definite ruling as to the admissibility thereof on that, too, would be made later, which was not done. In any event, the second conversation was of relative unimportance, and would necessarily go out of the case if the first conversation were ruled out. No such ruling was made. That it was not done was as much the fault of counsel for the plaintiff as of the court. However, we might add that the failure to rule has quite often been disapproved (64 C. J. 220, note 28; Missouri Pac. Trust Co. v. Beard (Miss.) 176 So. 156), but it has seldom led to a reversal of a case (Hess v. Moody, (Cal. App.) 95 P. (2d) 699), although the Montana Supreme Court several times threatened that it would, if the practice should continue. Frisbie v. Coburn (Mont.) 52 P. (2d) 882. In Leach v. Fred-

erick, 36 Wyo. 121, 253 Pac. 669, one of the counsel suggested that certain evidence be admitted subject to objection. That was acquiesced in by the other. We stated that "when the plaintiff acquiesced in the course pursued, and did not renew his objection by asking a ruling at some future stage of the trial, he was not in a position to assign as error the reception of the evidence. He should have obtained a ruling on which to base an exception." A number of cases are cited. In 4 C. J. S. 578 the rule is stated that "if, however, the court without a final ruling on its admissibility admits the evidence tentatively and conditionally subject to future consideration or action * * * it is necessary to secure the ruling of the court by subsequent motion or other procedure in order to preserve the objection for review." See further on this subject 5 C. J. S. 327, 333; 4 C. J. 760, 761; 3 C. J. 824; 64 C. J. 136, 220, 221; annotation in 48 A. L. R. 487. We think that there was sufficient competent evidence in the case to sustain the judgment herein, and we do not, accordingly, think that in view of the rules of law heretofore stated there is sufficient ground to reverse the judgment herein on account of the admission of the testimony above mentioned.

The fifth assignment of error is based on the following:

"Q. Assuming a man engaged in the sheep business in the year 1930 was unable to pay his bills as they became due, what would be your opinion as to the reasonableness or unreasonableness of the $750 charge to him?

Mr. Cromer: That is objected to as incompetent, irrelevant and immaterial, no probative value, not calling for any testimony from this witness which properly would affect a reasonable charge.

The Court: Objection overruled. Plaintiff excepts.

A. My opinion is it was excessive, the $750 fee."

The question was asked of and answered by Dr.

Rhea, a witness for the defendant. The testimony was elicited on the theory that the financial ability of a patient has a bearing on the amount of the fee which is reasonable. Counsel for plaintiff contends that such financial ability has nothing to do with the reasonableness of the charge. The courts seem to be in hopeless conflict on that question. 48 Am. Jur. 264; 48 C. J. 1168. We do not think it necessary to decide the point. In order to determine as to whether or not the above testimony was prejudicial we must examine what preceded it. Counsel for the plaintiff admitted that the doctor was qualified to testify on medical matters in Natrona County, Wyoming. The following testimony was admitted without objection:

"Q. In the course of your practice have you had occasion many times to refer prostate cases to physicians and surgeons specializing in that line of work in Denver? A. Well, I referred several to Denver. Q. Are you familiar with the reasonable and usual rates charged by physicians and surgeons in and near Denver, Colorado, in connection with the performance of such an operation? A. I believe so. * * * Q. Were you familiar with the usual and going charges for that type of operation among reputable physicians and surgeons in that line in Denver, Colorado, in 1930? A. Yes, sir. Q. Are you now familiar with it? A. Yes, sir. Q. Do you have an opinion as to the reasonableness or otherwise of a charge of $750 as has been testified to here for the performance of the prostatectomy operation? A. Yes, sir. Q. What, in your opinion, is that charge; reasonable or otherwise? A. I believe it is otherwise. Q. What is your opinion about it? A. I believe the charge is excessive. Q. Would you care to estimate to the court what in your opinion would be a reasonable charge for that service? A. Well, the average charge for such services both in Denver and around other like communities, averages from $250 to $500. Q. Dr. Rhea, would you say a charge of $500 for the operation would be the maximum chargeable by an outstanding specialist? A. Well, that would depend on circumstances. Q. As for example? A. Financial condition of

the patient, for instance. Those fees are often made on a sliding basis, depending a good deal upon the financial or earning capacity of the patient. A man making $100 a month as an income submitting himself to an operation of that sort, and a specialist performing an operation knowing the man's financial status would not charge him the same fee as he would a man having an income of $25,000 a year."

Then came the question objected to as above mentioned. It is apparent that the answer covered by the assignment of error herein added nothing to his previous testimony, which was admitted without objection. He stated that the fee of $750 was excessive. He had stated the identical thing previously without regard to the defendant's wealth. The sum and substance of Dr. Rhea's testimony seems to be that the ordinary charge ranges from $250 to $500 but that in exceptional cases the fee might be larger. There is nothing in this case to show that the situation was exceptional. While the doctor's thought that the financial condition should be taken into consideration might affect the weight of his evidence, it would not on that account make him incompetent. In fact, as already stated, his competency as a witness was admitted by the plaintiff.

The sixth assignment of error refers to the testimony of Dr. Stuckenhoff, in which he was asked to state the comparative populations of Omaha and Denver, and he answered that the population of Omaha was approximately 250,000 and that of Denver approximately 350,000. We can see no possible prejudice in the admission of this testimony, since the trial court might have referred to the census returns and obtained the same information therefrom.

The seventh assignment of error is as follows: "That the court erred at the trial of this case in rendering judgment in favor of the defendant and against the plaintiff and in dismissing plaintiff's petition with

prejudice, and that the court erred in so holding, finding, deciding and declaring, in said judgment, as more fully appears in page 20 of the record on appeal, to which order and judgment plaintiff excepted." Page 20 of the record merely shows the judgment which was entered in the case. The assignment of error presents no question for review in this court. That has often been decided. Peterson v. LeFaivre, 44 Wyo. 378, 12 P. (2d) 385; Stein v. Schuneman, 39 Wyo. 476, 273 Pac. 543; Posvar v. Pearce, 37 Wyo. 509, 263 Pac. 669; Leach v. Frederick, 36 Wyo. 121, 253 Pac. 669; Hall Oil Co. v. Barquin, 28 Wyo. 151, 154, 201 Pac. 160.

No brief has been filed herein on behalf of the defendants. That is probably due to the fact that Wm. B. Cobb acted as their attorney in the court below. He is now in the military service of the United States, as we are informed. Otherwise he would probably be here insisting upon the application of the rule just stated, and we hardly feel justified under the circumstances to ignore it. However, even if we should do so, we do not think that the plaintiff has shown that the judgment herein should be reversed. The argument of counsel for plaintiff in seeking to reverse the judgment is based mainly upon some letters contained in the record, written in answer to demands for payment, and in which, generally speaking, Lewis Barker stated that he would pay the account due Dr. Howard if he could obtain the money; that he was unable to do so. One or two of these letters were written after the defendant had paid the sum of $500. Counsel insists that in view of these letters judgment should have been rendered in favor of the plaintiff for the amount asked, since an account stated appears in the evidence. It may be admitted that these letters would have justified the court in entering judgment against Lewis Barker for the amount claimed. 1 Cyc. 485; 1 C. J. S. 607. Whether the court was bound to do so was another matter. These letters

were not binding on Mrs. Barker. Sec. 69-101, Rev. St. 1931 provides that "the necessary expenses of the family, and the education of the children are chargeable upon the property of both husband and wife or either of them and in relation thereto they may be sued jointly or separately." It appears to be the rule that the account stated for such expenses as between the husband and the creditor is not binding on the wife, or at least is not conclusive against her, and that she is liable only for the actual value of the necessary expenses incurred. Holmes v. Page 19 Ore. 574, 23 Pac. 961; see 26 Am. Jur. 983; notes 2 A. L. R. 81, 82. Ann. Cas. 1917 573-574. So that as to her the action was properly tried on the dispute as to the reasonable value of the services rendered by Dr. Howard. The letters above mentioned were not written in response to any account rendered by Dr. Howard to the defendant Lewis Barker. The account was given for collection to the "American Medical and Dental Association, Incorporated," which is evidently a collection agency, and the letters were written to it in response to various "duns" sent by it to Barker commencing in December, 1932. Whether that would make any difference on the question as to whether or not the account became stated need not be determined. Nor is it necessary to enter into the controversial subject whether or not an account may become an account stated between a surgeon and his patient which contains only two items. See annotation, 49 A. L. R. 1485, 1487. This action is upon an open account and not upon an account stated. In an action upon the latter, the petition must show that the account between the parties has been stated and a pleading failing to allege that does not state a cause of action upon a stated account. 1 C. J. 742-743; Wilson v. Waldron, 12 Wash. 149, 40 Pac. 740; Branum v. Burns, 121 Okl. 53, 247 Pac. 58; 1 Am. Jur. 290. It is stated in 1 C. J. S. 728 that an account stated may be waived,

and "the account stated is also waived by bringing an action upon the original account, or by failing to plead it in an action." And in 1 C. J. 709 it is stated that "where the action is brought and defended upon the original account the stated account is waived, in which event plaintiff cannot resort to the account stated as a basis for recovery but the items of the original account are open for investigation." It would accordingly seem that the action was properly tried also as to Lewis Barker on the dispute as to whether or not the fees charged were reasonable. Viewing it in that light, we must not lose sight of the fact that the value of professional services is a matter of opinion. If the testimony on behalf of the plaintiff that the value of the services in question was $750 stood uncontradicted, it would not follow that the court would have been bound to give judgment for that amount. Stimson v. Hunter, 234 Mass. 61, 125 N. E. 155, 7 A. L. R. 1067. In 48 C. J. 1174 the rule is stated (speaking of physicians and surgeons) that "the question as to what is a reasonable charge is one for the jury, or for the court passing upon questions of fact, even though the testimony as to the value is undisputed." See annotation in 42 L. R. A. 768; 45 L. R. A. N. S. 181; 41 Am. Jur. 263; Jones, Commentaries on Ev. (2d ed.) Sections 1366, 1373; Weeks on Attorneys at Law (2nd ed.) 697, speaking of professional services of lawyers, states: "In the absence of a contract between attorney and client, fixing the value of the services of the former at the price to be paid therefor, the attorney has the right to a reasonable compensation; but the jury are the proper judges of the value of such services, and in considering the reasonableness of such compensation they may take into consideration all the circumstances of the case, and are not bound by the opinions of witnesses summoned as experts; but their opinions should be consid-

ered in connection with the other evidence in the case." The leading case on the subject of professional services is Head v. Hargrave, 105 U. S. 45, 26 L. Ed. 1028, where the court stated among other things: "In an action for legal services the opinions of attorneys as to their value are not to preclude the jury from exercising their own knowledge and ideas of the subject. It is their province to weigh the opinions by reference to the nature of the services rendered, the time occupied in their performance and other attending circumstances and by applying to them their own experience and knowledge of the character of such services. The judgment of the witness is not, as a matter of law, to be accepted by the jury in place of their own." And the court held that the jury should have been given in substance the following instruction asked: "In determining the value of the plaintiff's services the jury are not bound by the testimony of the expert witnesses; that testimony may be considered by the jury; but if, in their judgment, the value fixed by those witnesses is not reasonable, they may disregard it, and fix the amount which ,in their judgment, would be reasonable." The Supreme Court of the United States in The Conqueror, 166 U. S. 110, 41 L. Ed. 937, 17 Sup. Ct. 510, after quoting from Head v. Hargrave, supra, stated: "In short, as stated by a recent writer upon Expert Testimony, the ultimate weight to be given to the testimony of experts in question is to be determined by the jury, and there is no rule of law which requires them to surrender their judgment or to give controlling influence to the opinion of scientific witnesses." The Supreme Court of South Carolina, 47 S. C. 40, also quoting with approval from Head v. Hargrave, supra, stated among other things: "It will be observed that such testimony (of experts) is not the statement of any fact, but simply the expression of opinions, to aid

the jury in forming their own opinions as to the value of the services; which, after all, is the final test of such value." The Supreme Court of Missouri in Cosgrove v. Leonard, 134 Mo. 419, 426, stated that "the expert evidence as to the value of the services sued for was merely advisory, and that notwithstanding such evidence, the jury were the proper judges of the value of such services." We may add, that in a trial to the jury, the matter is to some extent in the control of the court, and an unreasonable verdict could be set aside. Fowle v. Parsons, 160 Ia. 154, 141 N. W. 1049, 45 L. R. A. N. S. 181.

In the light of these principles of law and the evidence in this case, we cannot say that the trial court erred in holding, as it virtually did, that the value of the services sued for did not exceed the sum of $500, paid by the defendant Lewis Barker. Finding no reversible error in the record, the judgment must be affirmed, and it is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.