[Civ. No. 14498. First Dist., Div. Two. Nov. 9, 1950.]

SUSANNA EPPERSON, as Administratrix, etc., Respondent, v. W. B. ROSEMOND et al., Appellants.

Joseph A. Garry, Cyril F. Marelia and Melvin, Faulkner, Sheehan & Wiseman for Appellants.

C. D. Dorn for Respondent.

DOOLING, J.—In an action for a partnership accounting plaintiff, widow of the decedent Charles A. Epperson, as administratrix of his estate, had judgment against the appellants as surviving partners for $61,772.98.

Decedent and appellants were stockholders in a corporation

engaged in the manufacture of bus bodies. The corporate form was abandoned on December 29, 1943, and a partnership agreement was substituted which provided that decedent should receive 20 per cent of the profits. Decedent suffered a stroke of paralysis which kept him from participating in the business and on May 22, 1944, the parties executed a supplemental agreement which provided that from May 1, 1944, until decedent "shall return to active participation in the partnership affairs" the profits and losses of the business were not to accrue to the benefit or detriment of decedent. The adjustment of accounts and profits as of May 1, 1944, showed decedent's share to be $6,669.56.

Decedent returned to work in the business on September 15, 1944, and continued until his death in February, 1948. The evidence was conflicting as to the character and extent of his business activities during that period. The court found that "on said September 15, 1944, he again became an active participant in the partnership affairs, and continued said active participation to the date of his death . . . ."

It is not argued that the evidence does not support this finding. Instead appellants argue that, by his conduct in accepting only a drawing account during that period without receiving any share of the profits as such and by his signature to an audit prepared in 1947 showing only $6,669.56 to the credit of decedent, the court should have found that decedent's claim was barred: 1. by laches; 2. by estoppel; and 3. by an account stated.

The trial court made no finding on any of these issues nor was it called upon to do so. All three are affirmative defenses which must be pleaded in the answer. "(L)aches is a defense and not a condition of relief, and, if it does not appear on the face of the complaint, must be affirmatively pleaded and proven by the defendants." (*Victor Oil Co.* v. *Drum*, 184 Cal. 226, 243 [193 P. 243]; *Lucci* v. *United Credit & Collection Co.*, 220 Cal. 492, 497 [31 P.2d 369]; *Ellis* v. *Union Trust Co.*, 219 Cal. 50, 53 [25 P.2d 1]; *Ryan* v. *Welte*, 87 Cal. App.2d 897, 905 [198 P.2d 357]; *Katz* v. *Enos*, 68 Cal.App.2d 266, 276 [156 P.2d 461]; *Lotts* v. *Board of Park Commrs.*, 13 Cal.App.2d 625, 636 [57 P.2d 215].) "The rule is well established in this state that an estoppel to be available must be specially pleaded." (*Holzer* v. *Read*, 216 Cal. 119, 124 [13 P.2d 697]; *Lucci* v. *United Credit & Collection Co., supra*; *Promis* v. *Duke*, 208 Cal. 420, 426 [281 P. 613]; *Producers*

*Holding Co.* v. *Hill,* 201 Cal. 204, 209 [256 P. 207]; *Christian* v. *California Bank,* 93 Cal.App.2d 230, 234 [208 P.2d 784]; *Edgington* v. *Security-First Nat. Bank,* 78 Cal.App.2d 849, 857 [179 P.2d 640].) ''(T)he action was brought and defended upon the original contract, an account stated not having been pleaded in the answer. Under such circumstances the stated account is waived.'' (*Vaughan* v. *County of Tulare,* 56 Cal.App. 261, 269 [205 P. 21]; *Miracle* v. *Barker,* 59 Wyo. 92 [136 P.2d 678, 683]; *Reinhart & Donovan Co.* v. *Williamson,* 191 Okla. 539 [131 P.2d 765, 766].)

The defense actually asserted in the answer is the making of the supplemental agreement and ''that the disability of said C. A. Epperson continued and he remained as an inactive partner from May 1, 1944, to and including the date of his death on February, 1948 . . . .'' The court found against this defense on conflicting evidence and that finding on the defense tendered is conclusive on appeal.

▮ Included in the judgment was the sum of $21,710.06 found to be the decedent's share of the increase in value of the capital assets of the partnership over the ''acquired or book value.'' The partnership agreement contained the following provision in paragraph 14 thereof:

''That upon the death of a partner the partnership and its business shall continue uninterruptedly in the surviving partners . . . and the value of the partnership interest of such deceased partner shall be determined and shall be paid by the partnership as follows: The books of the partnership shall be closed as of the date of death of said partner, his share of the profits or losses hereof on said date shall be computed and any profits added to, or any losses deducted from, the capital contribution of said deceased partner as the same appears on the partnership books; that the sum so computed and determined shall be conclusively presumed, for all purposes, to be the value of his said partnership interest at the time of his death . . . .''

The formula agreed upon is explicit and clear. It takes no account of the increase or decrease in the value of capital assets but is based on ''the capital *contribution* of said deceased partner as the same appears on the partnership books.'' There is no claim that the decedent's capital contribution was not correctly entered in the books of the partnership; and that added to the profits is, by the partnership agreement, ''conclusively presumed . . . to be the value of his said partnership interest . . . .'' The matter was one open to the

contract of the parties and "(t)he accounting between partners is to be governed by the partnership agreement." (*Mervyn Investment Co.* v. *Biber,* 184 Cal. 637, 644 [194 P. 1037].)

Cases holding that in the absence of agreement a retiring partner is entitled to his share of the increase in value of capital assets are beside the point in the face of the express agreement of the parties in this case providing a different formula. The judgment should accordingly be reduced by $21,710.06.

The judgment is reduced to $40,062.92 and as so modified is affirmed. Appellants are awarded costs on appeal.

Nourse, P. J., and Goodell, J., concurred.

A petition for rehearing was denied on December 5, 1950, and the following opinion was then rendered:

THE COURT: Appellants where they blew very hot in their briefs blow very cold indeed in their petition for rehearing. In the petition for rehearing appellants say:

"The Court, in its opinion assumed that defendants relied upon the special defenses of laches, estoppel and an account stated. This assumption is refuted by an examination of the pleadings."

Counsel show something less than the ordinary amount of candor which might be expected in a petition directed to the same court which has read the briefs. ■ Appellate courts do not look to the pleadings to ascertain the points urged on appeal. They look to the briefs.

The only headings (Rule 15(a), Rules on Appeal) appearing in appellants' opening brief read:

"I. THE CLAIM OF DECEDENT IS BARRED BY LACHES.

"II. THE DECEDENT WAS ESTOPPED FROM ASSERTING HIS CLAIM.

"III. THE STATED ACCOUNTS WERE BINDING ON DECEDENT.

"IV. PROFITS DID NOT INCLUDE DIFFERENCE BETWEEN BOOK AND APPRAISED VALUE OF ASSETS."

We held with appellants on their point IV.

We invite counsel to read again their points I, II and III and the arguments under them. Such a reading will demonstrate why the court not only assumed that defendants relied on the special defenses of laches, estoppel and an account stated, but was compelled to believe that they placed their

sole reliance on those three defenses. Because those are the only defenses which they did in fact present in their briefs.
Appellants in their petition for rehearing are now seeking to change their basis of attack on the judgment. "Appellate courts cannot submit to piecemeal argument and will not consider on petition for rehearing questions not previously raised." (*Bradley* v. *Bradley*, 94 Cal.App.2d 310, 312 [210 P.2d 537, 211 P.2d 638].)

Appellants' petition for a hearing by the Supreme Court was denied January 5, 1951. Schauer, J., voted for a hearing.