William LOUTH and George Louth, Administrators of the Estate of Charles Louth, Deceased, Appellants (Charles Louth, Deceased, defendants below),

v.

C. E. KASER and Clifford G. Kaser, Appellees (Plaintiffs below), and E. G. SANDERS, Appellee (Third-Party defendant below).

No. 3401.

Supreme Court of Wyoming.

Aug. 31, 1965.

See also 364 P.2d 96.

James A. Greenwood, Cheyenne, and Pence & Millett and Alfred M. Pence, Laramie, for appellants.

Henderson, Godfrey, Kline & Uchner and Paul B. Godfrey, Cheyenne, for appellees.

Before PARKER, C. J., and HARNS-BERGER, GRAY, and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

Although this litigation was commenced on November 14, 1958, as an action by plaintiff C. E. Kaser to restrain defendant Charles Louth from interfering with Kaser's maintenance, operation, repair, construction, cleaning out, and use of John Gilland Ditch and its headgate which were located upon and across Louth's lands, that phase of the action was concluded by an agreement and stipulation of the parties approved and adopted by the district court's judgment dated March 24, 1960, in which it was decreed that Kaser was authorized to enter upon defendant's lands for the purpose of repairing and constructing, under supervision of a former state engineer of Wyoming, the original John Gilland Ditch line and which authorized and directed plaintiff Kaser to maintain the John Gilland Ditch across the lands of Louth including the headgate and measuring weir in a proper state of repair so as to permit adjacent use thereof in a manner not to interfere with Louth's proper use of his lands adjacent to the John Gilland Ditch and permit Kaser's entry upon Louth's lands for those purposes only.

That portion of the judgment and decree was not appealed.

However, prior to the entry of this judgment and decree, the court had permitted Louth to amend his answer to Kaser's complaint by pleading that the John Gilland Ditch had never conveyed from Lodge Pole Creek, from which Kaser had a water right for 3.50 cfs of water for irrigation of 245 acres of land, water in excess of 1.50 cfs; that 97 acres of the Kaser lands for which his appropriation was adjudicated had never been irrigated by diversion of water from Lodge Pole Creek through the John Gilland Ditch; that the adjudicated water right had been abandoned for more than 50 years to the extent of 97 acres; that not in excess of 148 acres of Kaser's lands had

ever been irrigated under the John Gilland Ditch water right; that for more than five years Kaser had not diverted any water from Lodge Pole Creek under the John Gilland Ditch appropriation and applied it to beneficial use upon any land; and that the John Gilland water right had been abandoned since 1952.

Notwithstanding the amendment was permitted, the district court refused to hear any evidence upon the matter of alleged abandonment. Upon appeal to this court because of this denial we held this exclusion of evidence was error and remanded the case for new trial. See Louth v. Kaser, Wyo., 364 P.2d 96.

Following the remand, additional parties were added and additional pleadings were filed in which Louth claimed damages for injury to his lands due to activities of Kaser and his agents, and Kaser counterclaimed for damages for interference with his entry upon Louth's lands to service the John Gilland Ditch. The entire cause was then tried to a jury.

By a pretrial order it was ruled, without objection from any party, that such pretrial order superseded all pleadings and should govern the course of the trial. That order also ruled as a matter of law that plaintiff Kaser had a right of way across Louth's lands for an irrigation ditch of sufficient capacity to carry the amount of water to which Kaser was entitled under the original appropriation. Among the issues of fact to be submitted to the jury under the pretrial order was the question of what were Louth's damages resulting from activities of the plaintiff C. E. Kaser after May 1, 1957, or of plaintiff-Kaser's agents after March 1, 1958, including damages for severance and inconvenience.

Upon the remand ordered by this court, and under the terms of the pretrial order, the cause was tried to a jury which returned its special verdict that the number of acres of Kaser's lands to which water had been beneficially applied was 147.51 acres; a general verdict in favor of Louth and against both the original plaintiff C. E.

Kaser and interpleaded plaintiff Clifford G. Kaser, fixing Louth's damages at $600, and a further general verdict in favor of Louth and against the two Kasers on their counterclaim against Louth. The court entered its judgment according to these verdicts, and Louth moved for a new trial, alleging there was error in the assessment of the amount of his damage. The motion was denied and Louth has appealed to this court insisting the amount of the $600 award to him was erroneous in the light of the jury's general verdict finding in his favor and against the Kasers, and Louth asks this court to increase the amount of his damage award to the sum of $10,820, to conform to what appellant claims is the undisputed evidence.

■ Appellant contends that under previous holding of this court we must assume the evidence in favor of Louth is true, leaving out of consideration entirely the evidence of the Kasers in conflict therewith and give Louth's evidence every favorable inference which may be reasonably and fairly drawn, referring us to Willis v. Willis, 48 Wyo. 403, 49 P.2d 670, rehearing denied 49 Wyo. 296, 54 P.2d 814. But appellant mistakes Louth's position in this appeal. Here Louth in this appeal is asking this court for additur, the effect of which is to contend the award of $600 to Louth was adverse to his entitlement. This places Louth in the position of a defeated and unsuccessful party. Therefore, we must consider only the evidence most favorable to the Kasers in passing upon the correctness of the jury's verdict and the court's judgment.

■ The unappealed portion of the district court's March 24, 1960, judgment and the unassailed pretrial ruling and order that C. E. Kaser has a right of way across Louth's lands for an irrigation ditch of sufficient capacity to carry the amount of water to which C. E. Kaser was entitled, coupled with the failure of Louth to successfully attack that right and later to at least tacitly admit C. E. Kaser had such a right of way, left Louth without any standing to claim damages or compensation for C. E. Kaser's taking or using the lands embodied in that right of way. Although by one of its instructions the trial court told the jury it might compensate Louth for damages actually resulting to him from activities of both Kasers and their agents on Louth's lands, between certain dates, "including severance damages, damages for inconvenience *and the value of the land contained in Plaintiff's [Kaser's] ditch right of way*," (emphasis supplied) the emphasized portion noted was erroneous as compensation for the value of the land taken by the right of way was not within the issues presented pursuant to the pretrial order and there could have been awarded no compensation for either Kaser's taking of that which C. E. Kaser already possessed.

The appellant has also conceded there should be no award for inconvenience damages and dwells only upon the activities of the Kasers and their agents between the specified dates in their ditch operations as causing compensable severance damages to Louth's lands. This leaves for decision whether these alleged activities of the Kasers and their agents were improper and, should they be so found, then the further question of whether this court in such event may properly increase the amount awarded by the judgment.

■ Louth criticizes the verdict and judgment by claiming there were irregularities in the proceedings of the jury which prevented him from having a fair trial upon his counterclaim respecting the issue of damages to his property. Our attention is not directed to any specific irregularity of the jury, and appellant seems to have waived or abandoned this contention.

Appellant then claims there was error in the assessment of the amount of damages for injury to his property. To support this claim appellant dwells at length upon testimony of his own witnesses which he considers favorable to his case which was intended to show there had been a material alteration in the size and nature of the ditch which C. E. Kaser and his agents

made during the specified periods, and that as a result some 60 acres of Louth's lands lying below the John Gilland Ditch had been converted from being lands irrigated by surface flow of natural waters from his higher lands and valued by his witnesses at $75 per acre to become arid lands similarly valued by his witnesses at only $30 per acre, it being Louth's theory that the Kasers' ditch operations had so deepened and widened the John Gilland Ditch that the natural flow of surface waters from his higher grounds were now interrupted by the ditch, thus depriving his lower lands of that natural water flow.

On the other hand, the testimony of Kasers' witnesses definitely disagreed with Louth's contention. For instance, a former water commissioner said the John Gilland Ditch had been under his supervision since 1932; that he saw it first in 1937, and last saw it in 1961; that there was no change in the size or nature of the ditch; that it was still about the same as it was in 1937, that the ditch would always take its full appropriation.

Another witness familar with the John Gilland Ditch from 1928, said he saw it in 1961 and 1964, and he "couldn't see very— if any, very little difference in the ditch" between 1928 and 1964. A further witness who was familiar with Louth's lands and who, starting in 1961, had leased the lands claimed by Louth to have been damaged, said he had cattle on the property and was familiar with the John Gilland Ditch; that if there was water or ice in the ditch they had trouble getting cattle to cross it, but that he did not lose any cattle. A still further witness familiar with the John Gilland Ditch from 1918 or 1919, saw it up to 1934 and again on the Saturday before the trial, and said he didn't observe any changes.

An employee of C. E. Kaser in 1952, 1953, 1954, 1957, and 1962, said from time to time he cleaned the John Gilland Ditch; that in 1952, 1953, and 1954, Louth moved cattle back and forth across the ditch without trouble; that the only difference in the ditch between 1952 and the last time he saw it (1962), was the installation of a headgate and weir.

One witness who had lived on the Louth property in 1961 and 1962 and was familiar with the John Gilland Ditch, although saying they had trouble getting cattle to cross the ditch when there was water or ice in it, also said the ditch was different from other ditches because they didn't have water in them. One witness who saw the John Gilland Ditch about a week before trial said it did not appear hazardous beyond any other irrigation ditch.

Clifford Kaser, who was living on C. E. Kaser's land since 1946, testified he was acquainted with the John Gilland Ditch since 1932 and was familiar with Louth's lands as early as 1928, 1929, and 1930, said there was no general enlargement of the ditch; that it was not true that he did more extensive work on the John Gilland Ditch in 1960 than needed to be done; that all that was done was cleaning out and washouts filled in and that the ditch was not enlarged, that it was not deepened, it was merely cleaned out and leveled; that when he was speaking of the size of the ditch being about the same in 1960 as it was in 1928, he was speaking of the physical size of the ditch, the comparative depth and width of the ditch.

■ These brief excerpts from evidence most favorable to Kasers are deemed sufficient to support a finding that there was no damage to Louth's lands from severance caused by either of the Kasers or their agents. Just what evidence impelled the jury to award Louth any damages at all is unclear, but it is unnecessary to inquire into that as Kasers have not appealed. We do not disregard appellant's insistence that the "before" and "after" values testified to by Louth's witnesses, in the absence of other or conflicting evidence, made it obligatory that they be accepted by the jury to establish the amount of Louth's damages. However, that question of a jury's right has long been settled in this State.

In Miracle v. Barker, 59 Wyo. 92, 106–107, 136 P.2d 678, 683, it was said, "If the testimony on behalf of the plaintiff that the value of the services in question was $750 stood uncontradicted, it would not follow that the court would have been bound to give judgment for that amount," and again, at 136 P.2d 684, " 'The judgment of the witness is not, as a matter of law, to be accepted by the jury in place of their own.' " And in Phelps v. Woodward Const. Co., 66 Wyo. 33, 61–62, 204 P.2d 179, 190, this court noted, "The record does not disclose how the court arrived at the amount of the judgment."

Again in Phelps v. Woodward Const. Co., 204 P.2d 190, there was quoted with evident approval from 3 Am.Jur., Appeal and Error, § 1180, p. 688, " 'In actions for unliquidated damages, * * * the courts are generally inclined to the view that there is no right or power to increase the amount of the verdict.' " The new section of Am.Jur.2d, dealing with the subject, 5 Am.Jur.2d, Appeal and Error, § 946, p. 373, says, "In actions for liquidated damages, some courts will correct an insufficient verdict by increasing the amount of recovery and affirming the judgment as thus modified, as where, in a contract action, the plaintiff was denied interest or other liquidated amounts to which he was entitled," citing Slane v. Curtis, 41 Wyo. 402, 286 P. 372, 288 P. 12, 69 A.L.R. 906, allowing additional interest where the amount awarded by the trial court was based on error in the preparation of the petition.

Although there is controversy as to the power of the court to increase the amount of a verdict rendered in an action for unliquidated damages, most courts have taken the view that there is no such power. Phelps v. Woodward Const. Co., supra. In that case this court said, 204 P.2d 190, " 'It follows that this court cannot summarily correct the judgment or direct the trial court to do so,' " and further, 204 P.2d at 190–191, "There may be a number of situations in which the rule stated in 3 Am.Jur. 688 is not applicable, but we think that it

is in the case at bar, if for no other reason than that we have no sufficiently definite basis by which we could increase the amount awarded by the trial judge." The court also mentioned that the only testimony of the value of the property was by the plaintiff, corroborated by one witness, and said at 204 P.2d 191,

" * * * There was no contradictory testimony on the point on behalf of the defendant. But, it is stated in 32 C.J.S., Evidence, § 568, pp. 385–387 as follows: 'The weight of opinion evidence as to value is for the jury, court, or other triers of the facts to determine in the light of their own experience and knowledge of like subjects, and the knowledge, experience, and capability of the witness to draw a sound conclusion. An opinion is not conclusive even though uncontradicted.' * * * "

The above rule is now somewhat differently stated in 32 C.J.S. Evidence § 568(2), p. 583, but to the same effect: "An estimate of damages by a witness is not binding or conclusive, even though it is uncontradicted, and its weight is for the jury or other trier of the facts."

It is almost axiomatic that the question of credibility of testimony is always present, and it not infrequently happens that both courts and juries discount opinion evidence to a considerable extent and this they have a right to do.

Although we may not be bound by these previous observations of this court, we are convinced that, except in cases where the amount of damages is liquidated, the better rule is to leave stand the determination of damages made by the trier of fact where it is challenged upon the single ground of insufficiency.

Finding no error in the verdict and judgment, the same are affirmed.

Affirmed.

Mr. Chief Justice PARKER concurs in the result.