# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 16

OCTOBER TERM, A.D. 2013

January 28, 2014

MARK S. HICKS, administrator and
personal representative of the ESTATE
OF JOHNNA R. HICKS,

Appellant
(Plaintiff)

v.                                                           S-13-0107

TUENIS D. ZONDAG, M.D., and
CENTRAL WYOMING
NEUROSURGERY, LLC,

Appellees
(Defendants).

*Appeal from the District Court of Natrona County*
*The Honorable W. Thomas Sullins, Judge*

*Representing Appellant:*
    Laurence W. Stinson, Stinson Law Group, P.C., Cody, Wyoming

*Representing Appellees:*
    Jeffrey C. Brinkerhoff, Brinkerhoff Law, Jeffrey C. Brinkerhoff, P.C., Casper, Wyoming

*Before KITE, C.J., and HILL, VOIGT,\* BURKE, and DAVIS, JJ.*

*\* Justice Voigt retired effective January 3, 2014*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    The estate of Johnna Hicks sued Dr. Tuenis Zondag for negligently causing Mrs. Hicks' death while he was treating her for severe chronic pain.  It also claimed that the doctor's employer, Central Wyoming Neurosurgery, LLC, should be held vicariously liable for his claimed negligence in causing her death.  After a nine-day trial, a Natrona County jury found that Zondag was not negligent in his treatment of Hicks and returned a defense verdict.  In its timely appeal from the judgment entered on that verdict, the estate poses one question:  Did the district court commit reversible error by permitting Zondag and his codefendant to introduce the testimony of two expert witnesses on the doctor's adherence to the appropriate standard of care for practitioners of pain medicine?  We affirm.

## ISSUES

[¶2]    Although Appellant characterizes the district court's decision as one involving an abuse of discretion, we believe this appeal is appropriately resolved by answering the following question:

> Did Appellant waive objections to cumulative testimony
> under Wyoming Rule of Evidence 403 by failing to object at
> trial after the district court denied a motion in limine on that
> basis?

## FACTS[1]

[¶3]    Between 2000 and 2006, Mrs. Hicks was plagued by a variety of abdominal ailments, a number of which required surgical intervention.  Her primary care physician documented problems with kidney stones, gallstones, appendicitis, colonic obstructions, uterine cysts, and a hysterectomy, many of which were complicated by infections and accompanied by adhesions.  During that period she was frequently prescribed opioid analgesics, including Demerol, oxycodone, hydrocodone, and morphine.  That mode of treatment became constant as Mrs. Hicks continued to suffer from severe chronic pain in her upper right abdomen.  Testing and referrals to specialists proved unsuccessful in uncovering or treating the source of the pain, and she eventually began to experience depression as persistent as her pain.  For that condition, her primary care physician prescribed the antidepressant fluoxetine, which is more commonly known by the brand name Prozac.

---

[1] The record that the parties brought before this Court contains only the trial testimony of their standard of care experts and no trial exhibits.  Therefore, we had to derive many of the background facts set out below from documents attached to the parties' pretrial pleadings and motions, particularly those of the appellant estate.

1

[¶4]    Eventually her primary care physician referred Mrs. Hicks to Dr. Zondag, who first met with her on July 20, 2006.  Dr. Zondag is board-certified in family medicine, but he maintains a practice that is focused on occupational medicine and also involves pain management.  He first referred Mrs. Hicks to a urologist and gastroenterologist and then to a psychologist to obtain an evaluation of her depression.  No likely urological, gastrointestinal, or spinal problem could be identified as the source of her pain.  Zondag briefly treated her with oxycodone as previous providers had done until she began to experience episodes of both extreme pain and gastric difficulties caused by the oral analgesics.  He then began prescribing Actiq.

[¶5]    Actiq is an ultra-fast-acting form of the opioid fentanyl.  It is used to treat the rapid onset of acute intense pain in patients who are already being treated for chronic pain with more common opioids.  Originally designed and FDA-approved for cancer patients, it is extremely powerful and is prescribed in dosages measured in micrograms rather than in milligrams.  The rapid onset of its analgesic effect is in large part due to the fact that it is administered transmucosally – that is, it is absorbed through the membrane on the inside of the cheek by placing a lozenge on a stick between the patient's cheek and gum.  Approximately one-quarter of the drug in an Actiq "lollipop" is delivered in that fashion.  Of the remaining three-quarters that are swallowed, only one-quarter is available for pain relief.  The rest is absorbed by internal organs and quickly loses its potency.

[¶6]    Dr. Zondag prescribed 800 mcg. Actiq "suckers" and instructed Mrs. Hicks to use half of one at the onset of severe pain and to use the remainder only if the half dosage did not work.  For nearly a year she obtained relief by using one-half to a full lollipop per day along with either oxycodone or hydrocodone.  A laparoscopic appendectomy during that period did not relieve her chronic pain, and Dr. Zondag began to suspect that her pain was neuropathic, perhaps resulting from nerve damage from a 2005 surgical procedure.  Accordingly, he tried a series of nerve root block injections that provided some relief for periods ranging from two to five months.  During those periods, Mrs. Hicks was able to reduce her use of Actiq to between half a pop every other day from half a pop per day.  That lasted until January of 2008 when she had kidney stone surgery.

[¶7]    When oxycodone proved ineffective in combating the severe pain accompanying Mrs. Hicks' postoperative urethral spasms, Dr. Zondag temporarily authorized her to use up to four Actiq per day for five days.  He then reduced her dosage to a maximum of one per day.  In early February, after she complained that her combined medications were reducing her cognitive abilities, he devised a schedule aimed at weaning her off both Actiq and oxycodone. However, persistent unrelenting pain in the upper right quadrant of her abdomen returned within a week, and Dr. Zondag returned her dosage to one Actiq per day.  He also discussed the costly option of surgically placing a pain-relieving spinal cord stimulator in the upper thoracic portion of her spine so as to allow her to reduce or discontinue use of Actiq.

[¶8]  By May, Mrs. Hicks was beginning to suffer from depression again, and after a five-month break, she was again prescribed Prozac.  She began asking for early refills of her Actiq prescription, even though Dr. Zondag had recently authorized her to use two per day.  Dr. Zondag refused those requests and instructed her not to overuse the drug.  On June 5, 2008, she reported that she was suffering more acute pain due to a urinary tract infection.

[¶9]  That night Mrs. Hicks watched television from the living room couch with her daughter, who went to bed at 10:00 p.m.  At 6:00 the next morning, her husband found her dead, still curled up on the couch.  A forensic pathologist who conducted an autopsy later that day found that she died from pulmonary congestion and edema. Because of the presence of fentanyl and fluoxetine in her blood stream, he concluded that she accidentally overdosed on her medications, which compromised her respiration while she slept.

[¶10]  Her estate filed suit in mid-August of 2010, and it identified Dr. Gerald Aronoff as its standard of care expert on December 1, 2011.  On March 30, 2012, Dr. Zondag and his employer named Dr. Lynn Webster and Dr. Dermot Fitzgibbon as proposed expert witnesses on the standard of care.  The estate deposed Drs. Fitzgibbon and Webster on, respectively, July 11 and August 21, 2012.  On December 21, it filed a motion in limine[2] seeking to confine the defendants to a single standard of care expert at trial because the testimony of Drs. Fitzgibbon and Webster would be duplicative.  The district court conditionally denied that portion of the estate's motion on January 22, 2013, noting that its denial was "without prejudice to Plaintiff's right to assert objections at trial at the time proposed evidence is cumulative or otherwise in violation of Rule 403 of the Wyoming Rules of Evidence[.]"[3]

[¶11]  Both Webster and Fitzgibbon testified at trial.  Counsel for Mrs. Hicks' estate cross-examined both, but raised no Rule 403 objections before or during their testimony.  As noted above, the jury concluded that Appellant had not proven that Dr. Zondag had failed to meet the standard of care applicable to practitioners of pain medicine, and it therefore rendered a defense verdict.

---

[2] A motion commonly used to obtain a pretrial ruling on the admissibility of evidence and derived from a Latin phrase meaning "at the outset."  Black's Law Dictionary 858 & 1109 (9th ed. 2009).

[3] Wyoming Rule of Evidence 403 provides as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

W.R.E. 403.

## DISCUSSION

[¶12] Appellant contends that its liminal motion sufficed to preserve its present claim of error for appeal even though it did not object to the testimony of the two defense experts. The construction of court rules, like the construction of statutes, is a question of law, which we review de novo. *Dorr v. Smith, Keller & Assocs.*, 2010 WY 120, ¶ 11, 238 P.3d 549, 552 (Wyo. 2010). To determine whether Appellant's contention is correct, we must first look to Wyoming Rule of Evidence 103, which states in pertinent part:

> (a)    *Effect of erroneous ruling.* — Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> (1) Objection. – In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record[.]

W.R.E. 103(a). The committee note to that portion of Rule 103 states that a party need not "make a further objection at the time of trial to evidence which has previously been ruled admissible on" a prior pretrial motion in limine. However, that statement does not completely convey the intent of the rule in light of the avowed purpose of the drafters to conform Wyoming's evidentiary rules to those of similar federal rules. *See* the August 26, 1977 Order of this Court (effective January 1, 1978) adopting the Wyoming Rules of Evidence and the committee note prefacing those rules.

[¶13] The original version of F.R.E. 103(a) was identical to the current Wyoming rule. In 2000, the federal rule was amended to change subsection (b) to the following:

> (b) **Not Needing to Renew an Objection or Offer of Proof**. Once the court rules definitively on the record--either before or at trial--a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

F.R.E. 103(b). Professors Mueller and Kirkpatrick have described this amendment as intended to clarify existing law, not to substantively change the rule.

> Prior to the amendment of what is now Rule 103(b) in the year 2000 (at that time, the relevant language was in subsection (a) of Rule 103), courts had split on the question whether the party seeking to exclude had to renew the objection at trial when the evidence was offered, with many cases indicating that the objection must indeed be renewed,

4

and some states continue to follow the same practice. Many courts, however, held that the objection need not be renewed at trial, or at least took steps in that direction.

The cases that required the objection to be renewed stress that motions in limine present evidential issues in a somewhat removed or hypothetical setting, that courts do not always give them serious consideration, and that rulings in this setting are subject to change as the trial unfolds. The cases that came out the other way stress that often the disposition of such motions materially affects the course of trial, that the parties sometimes brief and carefully argue the relevant points, and that trial judges sometimes give definitive and unqualified rulings. In this uncertainty, lawyers were obviously well advised to renew their objections, especially if the court defers its ruling or expressly leaves room for reconsideration.

As amended, the language we now find in Rule 103(b) provides that a party seeking to exclude evidence does not have to renew the objection at trial if the court entered a definitive ruling at an earlier time, but the objection does have to be renewed if the trial court refused to rule on the earlier occasion, or deferred ruling, or entered a nonfinal or provisional or conditional ruling indicating that the matter remains open. The amended language in Rule 103(b) actually reaches beyond pretrial motions, and applies to definitive on-the-record rulings that are made at any time during the course of the proceedings.

. . .

The requirement that the ruling be "definitive" is clearly satisfied if the trial judge rules in an unequivocal manner, without reserving the matter for further consideration as the trial progresses and the evidence unfolds.

1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 1:10 (4th ed. 2013) (footnotes omitted).

[¶14]   In *Miracle v. Barker*, 59 Wyo. 92, 136 P.2d 678 (1943), a case preceding adoption of the federal and Wyoming rules of evidence, this Court addressed the effect of a non-definitive pretrial evidentiary ruling on a party's obligation to object to the admission of

that evidence at trial. We held in *Miracle* that when a trial court defers a final ruling on a challenge to evidence and holds the question open for further consideration at a later time, the party attempting to exclude the evidence must renew his challenge and seek a final ruling by objection or otherwise if he wishes to preserve any issue concerning the admission of that evidence for appeal. *Id.* at 100-01, 136 P.2d at 681. We therefore find our pre-rules precedent to be in accord with the principles underlying F.R.E. 103, the source of our comparable Wyoming rule, and we hold that Appellant needed to object during trial to preserve the issue raised in its motion in limine, unless it can be said that the district court's ruling on that motion was definitive.

[¶15] The district court's ruling was manifestly not definitive. The court left Rule 403 issues open for further consideration once Drs. Aronoff and Webster actually testified at trial, and it all but engraved an invitation for the estate to challenge any expert testimony that it deemed cumulative at trial.

[¶16] By the time Dr. Fitzgibbon testified, the trial judge would have had a good understanding of the Appellant's case (because the estate had rested) and of the testimony of Dr. Webster, and he would therefore have been in a much better position to determine whether some or all of the testimony of Dr. Fitzgibbon would be unnecessarily duplicative or otherwise violate Rule 403. When no objection was made, the judge would have been left to speculate as to whether Appellant had decided that it was a better tactical move to cross-examine both experts rather than to attempt to exclude all or part of the testimony of one of them. One of the major pitfalls of disclosing two experts on a single issue is that they often disagree with one another in certain respects, and a skilled cross-examiner may be able to weaken both by exploiting those inconsistencies. The record did not tell the trial judge and likewise does not inform us whether the estate did not object for legitimate tactical reasons or because of some other consideration.[4]

---

[4] At argument, Appellant's counsel commented on the difficulty of objecting on Rule 403 grounds in the presence of the jury. Wyoming Rule of Evidence 104 permits the court to conduct hearings on the admissibility of evidence outside the presence of the jury "when the interests of justice require." W.R.E. 104. As Mueller and Kirkpatrick observe in their treatise on federal evidence:

> Especially when Rule 103(d) and 104(c) are read together, it is clear that the catchall language in the latter (the directive to hold hearings outside the jury's presence when "justice so requires") applies in civil and criminal cases alike. There are two obvious reasons to hold hearings on admissibility issues outside the jury's presence: One is to keep from exposing the jury to evidence that might ultimately be excluded, which would undercut the purposes of excluding it in the first place. The other is to keep the objecting party from having to incur additional risks (beyond those that come with merely objecting) by making arguments of the kind typically necessary in support of objections.

1 Mueller, *supra,* § 1:32.

[¶17] Appellees point out that a failure to object would require the estate to establish that admitting the testimony of Dr. Zondag's two standard of care experts amounted to plain error. *Wyoming Sawmills, Inc. v. Morris*, 756 P.2d 774, 778-79 (Wyo. 1988). That is, it would have to show that the facts said to constitute the alleged error are clearly reflected in the record, that the district court violated an unequivocal rule of law in a clear and obvious and not merely arguable way, and that there is a reasonable possibility that, absent the alleged misconduct, the outcome of the trial would have been more favorable to the estate. *Leach v. State*, 2013 WY 139, ¶ 26, 312 P.3d 795, 801 (Wyo. 2013).

[¶18] Appellant did not argue in its brief that allowing both experts to testify at trial in the absence of an objection constituted plain error. As we discussed in *Winterholler v. Zolessi*, 989 P.2d 621 (Wyo. 1999), the application of W.R.E. 403 to situations in which a party wishes to call multiple experts is a case-specific determination requiring a trial judge to weigh competing interests in light of the nature of the case being tried. 989 P.2d at 629; *see also* 1 Mueller, *supra*, § 4:15. Because of the considerable discretion afforded to trial judges in making such decisions, showing that the judge's failure to limit the expert testimony sua sponte transgressed a clear and unequivocal rule of law would, in most cases, be a difficult if not insurmountable task. *Case v. Outback Pipe Haulers*, 2007 WY 181, ¶ 14, 171 P.3d 514, 517 (Wyo. 2007). We decline to analyze whether there might have been plain error in the absence of a complete record and any argument by Appellant that it occurred. *Vigil v. State*, 2010 WY 15, ¶ 21, 224 P.3d 31, 39 (Wyo. 2010).

## CONCLUSION

[¶19] In its order on the motion in limine filed by Mrs. Hicks' estate, the district court deferred a definitive ruling on whether the defense could call two standard of care experts until trial. That decision required the estate to object to the testimony of the second expert when the district court could make a meaningful determination under W.R.E. 403. When it did not object, it failed to preserve the issue for appellate review. Affirmed.