No. 20,042.

EDWIN W. NEWBURY *v.* HARDY J. VOGEL, ET AL.
(379 P. [2d] 811)

Decided March 4, 1963.     Rehearing denied April 1, 1963.

Messrs. MYRICK, SMITH and CRISWELL, for plaintiff in error.

Messrs. WORMWOOD, O'DELL and WOLVINGTON, for defendant in error Hardy J. Vogel.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

PLAINTIFF in error Newbury was the plaintiff in the trial court and defendants in error Vogel and Fittipaldi were the defendants. The parties will be referred to as they appeared in the trial court or by name.

The complaint alleged that each of the defendants had so negligently operated a motor vehicle as to result in permanent injuries to the plaintiff. He demanded special damages, including medical and hospital expenses incurred, and loss of wages in the amount of $6,616.87. Compensation was also asked for diminished earning capacity, for past and future disability, and for past and future pain and suffering in the amount of $35,383.13, making a total of $42,000.00.

Upon trial, the jury returned a verdict for the plaintiff in the sum of $5,000.00 against the defendant Vogel, and exonerated the defendant Fittipaldi from liability. Judgment was entered on the verdict and the plaintiff is here by writ of error, contending that errors committed by the trial court affected the amount of the award

returned by the jury, which he contends is inadequate. He seeks reversal and remand for a new trial on the issue of damages only. He does not complain of the verdict exonerating Fittipaldi.

Defendant in error Vogel does not assert error by the trial court with respect to the issue of liability or to the exoneration of Fittipaldi, but contends that the rulings of the trial court with respect to the issue of damages do not constitute reversible error.

It is plaintiff's contention that the trial court erred in:

1. Failing to give an instruction embodying his theory of the case with respect to present and future disability, pain and suffering; and

2. Unduly limiting the scope of plaintiff's closing argument by refusing to allow a "per diem" suggestion to the jury on the elements of past and future pain and suffering.

Since the errors assigned deal only with the question of damages, we need not discuss the facts relating to the accident upon which the claim for damages is based, but will deal only with the evidence pertinent to the issue of damages.

Medical testimony concerning the nature and extent of Newbury's injuries was offered by each party. The testimony of Newbury's medical witness was to the effect that as a result of the accident Newbury had suffered an acute spinal sprain which had been super-imposed on a pre-existing arthritic condition. It was his opinion that at the time of the trial Newbury had a permanent disability which would be manifested primarily by pain, stiffness and chronic discomfort; that a part of this disability was attributable to the original arthritis and a part to the accident, but how much was due to the effect of the trauma incurred in the accident was "the question."

The testimony of Fittipaldi's medical expert was essentially the same, this witness stating that no one could say with certainty what limitation of motion, and

what portion of the pain, could be attributed to the original arthritic condition and what portion to the trauma. Vogel's medical expert agreed that there had been a sprain as a result of the accident, but it was his opinion that all of the effects of the sprain had subsided and that all of Newbury's complaints were now due to a pre-existing arthritic condition.

Newbury testified that prior to the accident he had no pain in either his neck or his back and that although he was at the time of the trial working regularly he did suffer from pain in his neck and back at the conclusion of his day's work which became worse toward the end of the work week.

Newbury's wife testified that he rarely participates in activities which were his wont before the accident and that at the time of the trial he was continually applying a heating pad to his neck.

I. *Did the instructions given by the trial court sufficiently present the plaintiff's theory of the case with respect to the damages which might be awarded him by reason of limitation of motion in his neck and back and past and future suffering?*

We hold they did not. Instruction No. 17 given by the trial court provides:

"You are instructed that if you find from the evidence that before the accident the plaintiff had an osteoarthritic condition, and further find that because of the accident this condition was aggravated, then the plaintiff is entitled to recover because of disability or pain proximately due to such aggravation; but is not entitled to recover for any physical ailment or disability which may have existed prior to the accident, or for any ailment or disability which plaintiff now may be suffering which was not caused or contributed to by reason of the accident."

Newbury contends that this instruction, while proper as far as it went, did not sufficiently cover plaintiff's theory of the case and the evidence in support thereof.

524

■ We have stated many times and as recently as *Renell v. Argonaut Liquor Co.*, 148 Colo. 154, 365 P. (2d) 239, that a party to a lawsuit is entitled to an instruction embodying his theory of the case, if there is evidence in the record to support it.

It was plaintiff's theory that the pre-existing arthritis caused him no pain before the accident; that the accident aggravated the pre-existing arthritis; that he now has permanent disability consisting of a limitation of motion, pain and soreness; and that it is impossible to determine the amount of such disability attributable to the prior arthritic condition and that caused by the accident. In accordance with this theory, plaintiff submitted his tendered Instruction No. 9, which in part pointed out to the jury that if in truth they could make no apportionment between the amount of his present and future disability due to the pre-existing arthritis, and the amount due to the accident, the defendant was liable for the entire disability.

Two of the medical experts testified that a portion of plaintiff's permanent limitation of motion, pain and soreness was due to the accident and a portion was due to the pre-existing arthritis, but they both stated that they could not apportion between the two.

■ We find the law to be that where a pre-existing diseased condition exists, and where after trauma aggravating the condition disability and pain result, and no apportionment of the disability between that caused by the pre-existing condition and that caused by the trauma can be made, in such case, even though a portion of the present and future disability is directly attributable to the pre-existing condition, the defendant, whose act of negligence was the cause of the trauma, is responsible for the entire damage. *Owen v. Dix*, 210 Ark. 562, 196 S.W. (2d) 913; *Wise v. Carter*, 119 So. (2d) 40 (Fla. Civ. App. 1960). Here the plaintiff was entitled to an instruction advising the jury that if they could not apportion the disability between the pre-existing arthritis

and the trauma, then the defendant was liable for the entire damage resulting from the disability. Under the instruction given the jury was advised that the plaintiff could recover only that portion of his damage which was due to aggravation. If the jury could not make such apportionment (and it might well be that they could not, since two of the medical experts could not) they were left without an instruction as to the law which would apply in such circumstances.

II. *Did the court err in refusing to allow plaintiff's counsel to suggest a per diem method of arriving at the amount to be awarded for pain and suffering?*

Whether it was proper for counsel for plaintiff in his closing argument to illustrate or to suggest to the jury the method by which he arrived at his demand for compensation for pain and suffering, by breaking the request down to a per diem or time segment basis has not previously been decided by this Court. The question is not a novel one, however, and in recent years has been the subject of decision in at least 27 jurisdictions, see 60 A.L.R. (2d) 1347 (Supp. 1960, 1962, 1963), and of discussion in numerous law review articles, for example, 23 Ohio St. L. J. 573; 62 W. Va. L. Rev. 402; 43 Minn. L. Rev. 832; 28 U. Cinc. L. Rev. 138; 36 Dicta 373; 12 Rutgers L. Rev. 522; 1962 Duke L. J. 344; and has been the subject of monographs prepared by both sides of the Negligence Bar. See *Damages: Pain And Suffering In Dollars On A Unit-Of-Time Basis,* The Defense Research Institute, Inc., Nov. 1962; and 23 NACCA L. J. 255 and 24 NACCA L. J. 252.

The authorities appear to be rather evenly divided among (1) those who hold the argument is proper; (2) those who refuse to allow it; and (3) those who declare it to be a matter in the discretion of the trial court. In our judgment, the cases which recognize the propriety of the argument are based upon the better reasoning.

■ Most of the jurisdictions which have refused to allow the argument rely upon *Botta v. Brunner*, 26 N.J. 82, 138 A. (2d) 713 as a landmark case supporting their position. It is to be noted that in *Botta,* the New Jersey Court also forbade advising the jury of the total amount requested by the plaintiff for pain and suffering on the theory that the jury should hear nothing equating pain and suffering with money. Such is not the rule in Colorado. An integral part of the instructions given by the trial court in this state to the jury contains the amount of compensation sought by the plaintiff for pain and suffering. Generally instructions also advise the jury of the life expectancy of the injured party. If the total amount claimed and the life expectancy can be argued, what logical reason is there for refusing to permit counsel to engage in the mathematical process of computing the gross amount sought for pain and suffering, based upon the life expectancy of the claimant and reducing it to the units by which it is endured; that is, by segments of time?

■ In all probability no element of damages defies monetary admeasurement so elusively as does pain and suffering. Nevertheless, pain and suffering are compensable and must be translated into money by the jury. The very absence of a fixed standard by which pain can be measured and translated into compensation by a jury is a persuasive reason why counsel should be permitted to illustrate to the jury the manner in which he arrived at the total sum claimed for pain and suffering.

The jury must reach its verdict by the process of reasoning and upon the inferences to be drawn from the facts before it. That pain and suffering will continue permanently and that the plaintiff has a certain life expectancy is before the jury. The per diem argument is nothing more than a course of reasoning suggested by the plaintiff for translating pain and suffering into reasonable compensation, *Corkery v. Greenberg,* 114

N.W. (2d) 327 (Iowa, 1962); *Yates v. Wenk,* 363 Mich. 311, 109 N.W. (2d) 828.

It is contended that jurors often mistake the argument of counsel for evidence and are thereby misled into making excessive awards. Juries in this jurisdiction are always instructed that arguments of counsel are not evidence and the jury in this case was so instructed. We are not inclined to attribute to any jury a lack of sufficient mentality or discrimination to recognize the difference between evidence and argument. *Yates v. Wenk,* supra; *Evening Star Newspaper Co. v. Gray,* 179 A. (2d) 377 (D.C., 1962). If the impact of such argument should at one time or another result in an excessive verdict, the trial and appellate courts of this state have ample means to correct such a verdict.

The judgment is reversed and the cause remanded to the trial court for a new trial on the issue of damages only in accordance with the views above expressed.

MR. JUSTICE MOORE not participating.