Win CONDICT and Elsie Condict, Appellants (Defendants),

v.

WHITEHEAD, ZUNKER, GAGE, DAVIDSON & SHOTWELL, P.C., a Wyoming corporation, Appellee (Plaintiff).

No. 87–2.

Supreme Court of Wyoming.

Oct. 9, 1987.

Rex E. Johnson of Sherard, Sherard & Johnson, Wheatland, for appellants.

Paul J. Hickey of Rooney, Bagley, Hickey, Evans & Statkus, Cheyenne, for appellee.

Before BROWN, C.J., THOMAS, CARDINE and MACY, JJ., and RAPER, J., Ret.

RAPER, Justice, Retired.

A jury returned a verdict of $130,938 as the amount of unpaid attorney's fees and costs owing appellee for legal services provided to appellants. In this appeal, appellants raise questions alleging error with respect to some of the jury instructions given by the trial judge and claims of error for the trial judge's failure to give some jury instructions offered by appellants. Appellants also object to the form of verdict given for the jurors' consideration. There is a further issue as to the withdrawal of an exhibit after it had been received and the failure of the trial judge to instruct the jury to disregard the exhibit. Finally, appellants complain that appellee increased previously agreed on hourly rates without informing appellants of such increase.

We affirm the judgment appealed from, even though we cannot approve the form of some instructions given to the jury. We hold that there was no prejudice to appellants as a result of the instructions.

## I.

Appellants assert that Instruction No. 3 [1] covering appellee's contentions hampered

1. Jury Instruction No. 3 reads as follows:

"[Appellee's] position in this case is that the firm of Urbigkit, Whitehead, Zunker, Gage, Davidson & Shotwell was hired to represent Win and Elsie Condict in their long-standing dispute with family members over ownership and accounting of their ranching interests in Carbon and Albany Counties.

"[Appellee] contends that [it was] hired after [appellants] had hired and subsequently fired at least eight other law firms who had undertaken [appellants'] representation in the case of *Condict v. Condict,* Second Judicial District, State of Wyoming, 82C–219. [Appellee] committed to [appellants] that [it] would see [that appellants'] case was finally brought to trial and concluded. There is no dispute between the parties to this suit that [appellee] did in fact perform its promise to [appellants] to see that they had their day in court. In fact, [appellee] represented [appellants] in two separate trials in 1985, the second of which lasted approximately eight weeks and was one of the longest trials ever held in this Judicial District[.]

"[Appellee] contends that [it was] to be paid hourly for the legal services performed by [it] and that [it] billed [appellants] on a monthly basis for legal services rendered by members of the law firm.

"[Appellee] further contends that [it] accepted a deed to 40 acres of land from [appellants] as a retainer for [its] services, which was in addition to a $10,000 cash retainer. [Appellee] contends that the land was also security for the payment of legal services and that the parties agreed its value was $1,000 per acre. Further, [appellee] contends that it was understood between [appellee] and [appellants] that [appellants] could [reacquire] the 40 acres conveyed by payment of the agreed value of $40,000. [Appellants] have not paid [appellee] for this and [appellee] has given

credit for it to [appellants] on the amount claimed as due and owing for the legal services rendered.

"[Appellee] further contends that [it] advanced $55,000 out-of-pocket costs for [appellants] during the Condict v. Condict litigation. These costs include payments ordered by the Court for a receiver, who was to operate the Condict ranches during the lawsuit and for a survey of the ranches. These two bills which [appellee] paid for [appellants] exceed $30,000.

"Over the course of the year that [appellee] represented [appellants], several lawyers in [appellee's] firm were assigned to the Condicts['] file. Three lawyers individually performed hundreds of hours of work on [appellants'] behalf, they were Walter C. Urbigkit, Carole Shotwell and George A. Zunker. Mr. Urbigkit worked on this case until the day before he was sworn in as a Justice of the Wyoming Supreme Court. Following Mr. Urbigkit's appointment to the Supreme Court, [appellants'] case was handled to conclusion by Ms. Shotwell and Mr. Zunker.

"During the course of the year that [appellee] represented [appellants], [appellants] made partial payments to [appellee] for legal services and costs, but did not pay their bill to [appellee] in full.

"[Appellee] contends that requests for payment in full for legal services rendered and actual costs advanced [have] been made to [appellants] but [appellants] refuse to pay.

"[Appellee] contends that there is now due and owing to [it], after credit for partial payments and the 40 acres are given, the sum of $139,874.

"[Appellee] asks of you in this trial that you award [it] the $139,874 which [it] contend[s] is due. [Appellee] contends that the $139,874 is the amount [appellants] had agreed to pay

their argument, overemphasized the facts, was misleading, and misstated the evidence.

■ It should be noted that, in Instruction No. 3, supra note 1, there are several sentences not preceded by a statement that they are contentions of appellee. While we are convinced that the jury was not misled into believing that the court was instructing them that such statements had been proven as true, nonetheless, there should have been, somewhere in the instruction offered, a general reference stating that the entire instruction was merely a statement of appellee's contentions and that it was not to be considered as evidence by the jury—it is the duty of the jury to determine the facts from the testimony and exhibits produced in court.

■ In this case, other instructions clarified that the trial judge, by Instruction No. 3, was not instructing the jury as to his view of what the facts were or were not. There is no error when the matter complained of is covered in another instruction or by taking the instruction as a whole. *Cates v. Eddy*, Wyo., 669 P.2d 912 (1983).

In this instance, Instruction No. 1 pointed out that it was the "exclusive province of the jury * * * to determine the issues of fact in this case." By Instruction No. 2, the trial judge advised the jury that:

"If in these instructions any rule, direction, or idea be stated in varying ways, no emphasis thereon is intended by me, and none must be inferred by you. For that reason you are not to single out any certain sentence or any individual point or instruction and ignore the others, but you are to consider all of the instructions together and regard each in the light of all the others. The order in which the instructions are given has no significance as to their relative importance."

A general instruction, which would have eliminated any problem with the question of misconception by the jury, was offered by appellee but not used by the trial judge;

and that it is the reasonable value of the

it was to have followed the contentions instruction:

"I have not by these instructions or by any ruling made or by any act done or by anything said during the trial intended or attempted to give any intimation or opinion as to what the facts are or what are not the facts, what the proof is or what it is not, which witnesses are worthy of belief and which are not, or what your verdict should be."

This instruction strongly preserves the supremacy of the jury in their role as fact finder.

There is no question but that Instruction No. 3 was argumentative. There is really only one basic contention by appellee; it was hired by appellants to do legal work and had not been paid in full for services rendered and costs advanced. It is the contention of appellants that, while they do owe fees, those claimed by appellee were excessive and that they should not be required to pay some costs which were advanced. A single instruction in about so many words, along with the cautions before mentioned, would have been sufficient to tell the jury their job in this particular case.

A party is entitled to have the jury instructed with reference to that party's theory of the case when it is supported by the evidence. *Langdon v. Baldwin-Lima-Hamilton Corporation*, Wyo., 494 P.2d 537 (1972). Appellee apparently believed that all the facts set out in Instruction No. 3 were an essential part of its theory. They were from evidence which the jury had heard. The court's only duty was to state the issue for the jury, not to review the evidence supporting appellee's theory.

While the instruction is not a good instruction, an argumentative instruction is not necessarily reversible error. *MacManus v. Getter Trucking Company*, Wyo., 384 P.2d 974 (1963).

We conclude with respect to Instruction No. 3 that, while it was deficient in form, it was not prejudicial. "A party is not prejudiced by a particular instruction when the

services performed for [appellants]."

matter complained of is covered by other instructions or by taking the instructions as a whole." *Cates v. Eddy*, 669 P.2d at 917. The other instructions have a curative effect.

## II.

■ Appellants assert that Instruction No. 8 [2] amounted to a directed verdict.

Appellants spend considerable time arguing about the word "legally" just preceding the word "obligated" which appeared in the instruction as originally submitted by appellee. We see no difference in this case between being "obligated" or being "legally obligated." In any event, the only issue in the trial was how much was owed, after proper credits, at the time of trial. The instruction clearly leaves it up to the jury to decide "how much."

It should be pointed out that the trial judge had, at a time prior to trial, granted a partial summary judgment holding that:

"[Appellee] is entitled to compensation for the services rendered by it and its predecessor firm on behalf of [appellants] in *Condict v. Condict* [Second Judicial District, State of Wyoming, No. 82C–219] together with actual costs incurred in behalf of [appellants] in the cited litigation."

The court in effect held that there was liability but that a jury must decide the dollar amount of such liability. Instruction No. 8 so advised the jury and properly determined that there was liability, but it did not direct the amount. That question was the only one left for the jury.

## III.

■ Appellants assert there was error in Instruction No. 9.[3] They contend that the court took the factual question away from the jury and told them appellants received the letter in question.

The problem rests in the last paragraph where it is said that "[t]he denial by [appellants] of receipt of an item of mailing does not overcome the presumption of mailing." Appellee insists that this is in accordance with Employment Security Commission of *Wyoming v. Young*, Wyo., 713 P.2d 198 (1986). We disagree. What that case said was:

"Appellee's unsupported and uncorroborated statement of nonreceipt is some evidence toward establishing a finding contrary to the presumption, but the necessity for a factual determination of the question still exists.

" ' * * * For example, in the case of the presumption of receipt of a letter, referred to above, the defendant may destroy the presumption by denying receipt. Nevertheless, a jury question is presented, not because of the presumption, but because of the natural inference flowing from the plaintiff's showing that he had mailed a properly addressed letter that was not returned.' McCormick on Evidence § 345, p. 821 (2nd Ed.1972)." Id. at 201.

The denial does not destroy the presumption nor can it be disregarded. When that happens, there is still left a burden of proof

---

**2.** Instruction No. 8 reads as follows:

"[Appellants] hired the firm of Urbigkit, Whitehead, Zunker & Davidson to represent their interests in the case of *Condict v. Condict*, Second Judicial District, State of Wyoming, 82C–219.

"Therefore, [appellants], by hiring the firm of Urbigkit, Whitehead, Zunker & Davidson, obligated themselves to pay for the legal services provided them and the actual out-of-pocket costs advanced.

"You must then determine how much is presently owed to [appellee] for the legal services provided [appellants], plus amounts owed for actual costs advanced by [appellee] in behalf of [appellants] in *Condict v. Condict*, Second Judicial District, State of Wyoming, 82C–219."

**3.** Instruction No. 9 reads as follows:

"A rebuttable presumption exists that delivery of mail occurs when it is properly addressed, stamped and mailed.

"A presumption of delivery is based upon the probability that the postal service performs its duty in transmitting and delivering mail.

"In order to rebut the presumption of delivery, [appellants] must establish that the item of mail was not delivered.

"The denial by [appellants] of receipt of an item of mailing does not overcome the presumption of mailing and its receipt remains for you to determine."

by appellants that they did not receive the letter under the preponderance of the evidence instruction.

The law is found in Rule 301(a), W.R.E.: "In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." [4]

We are convinced that, while the instruction was erroneous in stating that "the denial of receipt does not overcome the presumption," the denial of receipt was at least part of appellants' evidence to carry their burden of establishing non-receipt. The third paragraph of Instruction No. 9 clearly places on appellants the burden of proving non-receipt as do the words "its receipt remains for you to determine." We would suggest that appellee's homework was deficient in preparation of this instruction. When read as a whole, however, the jury instruction is cured by the emphasis on receipt or non-receipt being a question for the jury.

While appellants objected to the instruction, we cannot find in the record a correct form offered by appellants. An objection to an instruction is not complete without a correct typewritten form being handed to the court for its use. Parties have not only the right but the duty to offer instructions. In the absence of submission of a proper written instruction, any claimed error is deemed to have been waived. *Texas Gulf Sulphur Company v. Robles*, Wyo., 511 P.2d 963 (1973). It is insufficient merely to state that the instruction is not complete or an accurate statement of the law. *Runnion v. Kitts*, Wyo., 531 P.2d 1307 (1975). See also *Logan v. Pacific Intermountain Express Company*, Wyo., 400 P.2d 488 (1965), and Rule 51, W.R.C.P.

We have discussed Instruction No. 9, supra note 3, only in the hope that it never again will be used as a form in some future case.

## IV.

Appellants assert that there was plain error in the form of the verdict presented for use of the jury,[5] the complaint being directed to the words "as a result of [appellants'] refusal to pay." Appellants did not object to the form at the time of trial, so they must rely on plain error. In that regard, appellants only make the bare statements that those words were "prejudicial" and "unfair" without any support for such position or contention. We will not consider any alleged error which is supported by only perfunctory argument and which is without authority. *Goggins v. Harwood*, Wyo., 704 P.2d 1282 (1985). At the most, the words considered offensive were surplusage.

## V.

It may be well to set out under what circumstances an improper instruction will be considered reversible error. In order to hold an improper instruction reversible, the record must show that substantial rights were affected. Rule 7.04, W.R.A.P. For an error to be harmful, there must be a reasonable possibility that, in the absence of error, the verdict might have been more favorable to a party, and the burden is on the appellant to show where the error is prejudicial. *ABC Builders, Inc. v. Phillips*, Wyo., 632 P.2d 925 (1981). Merely showing an error occurred does not create a presumption of prejudice as injury to an appellant. *Anderson v. Bauer*, Wyo., 681 P.2d 1316 (1984).

California is a leader in preparation and use of pattern jury instructions. In 1 California Forms of Jury Instruction, Procedures and Instructions § 1.13[3] (1987),

---

**4.** See Mueller, "Instructing the Jury Upon Presumptions in Civil Cases: Comparing the Federal Rule 301 With Uniform Rule 301," XII Land & Water L.Rev. 219 (1977). Wyoming has adopted Uniform Rule 301.

**5.** The verdict form included the following:

"What amount, if any, do you find is owing [appellee] as a result of [appellants'] refusal to pay for legal services and costs provided them by [appellee]?
   $_____."

there are set out various ways to determine the presence of prejudice arising from an erroneous or defective instruction:

"If it appears that giving or refusing to give an instruction was likely to mislead the jury and become a factor in its verdict, then the instructional error is prejudicial and a court should not speculate on what may have been the basis for the jury's verdict. Although no exact formula exists for measuring the degree of error that will be found prejudicial, a number of factors can be considered: (1) the extent to which there is conflict in the evidence on critical issues; (2) whether or not the respondent's argument to the jury may have contributed to the instruction's misleading effect; (3) whether or not the jury requested a re-reading of the erroneous instruction or of related evidence; (4) the closeness of the jury's verdict; and (5) the effect of other instructions in curing the error." (Footnotes omitted.)

■ We are unable to see where corrected instructions would have resulted in any different verdict or that the jury on the whole were misled. While appellants claimed that the fees charged exceeded an agreement for a fixed rate per hour during the entire period of employment, there is no dispute that appellee was employed and that it was to be paid for services rendered. The letter, Exhibit 4, which appellants claim never to have received, is not before us so we are unable, in its absence, to adequately determine how critical it may have been. It is appellants' burden to bring a complete record upon which we may make a decision. *In re Estate of Manning,* Wyo., 646 P.2d 175 (1982); Rule 4.02, W.R.A.P.

The evidence of appellee was voluminous as to the time spent in preparing for and trying the Condict versus Condict case and included the testimony of two experienced lawyers that the fees charged were reasonable under the circumstances. Appellants cling to the idea that an hourly charge mentioned by one of appellee's lawyers was an agreement that the charge would not be increased. The testimony nowhere else bears this out. We are convinced that appellants are simply arguing that the jury must believe their testimony and not that of appellee. On review, we apply the following standard. We assume that the evidence of the prevailing party is true and leave out of consideration the evidence presented by the unsuccessful party. *City of Rock Springs v. Police Protection Association,* Wyo., 610 P.2d 975 (1980). We find nothing in the evidence to disclose that the jury were misled by any of the imperfect instructions given by the district court.

Since we have not been favored with a transcript of closing arguments, we cannot see how appellee's argument may have contributed to an instruction's misleading effect or how appellants may have been hampered in their closing argument to the jury.

The jury did not request any explanation of or have any questions with respect to any of the complained of instructions or related evidence.

We have no way of telling how close the jury's verdict was, other than that it was unanimous. Appellants asked that the jury be polled. Each member of the jury responded that the verdict was his or hers. We can add that the jury went out at 11:43 a.m. and returned at 2:44 p.m. with their verdict, a period of about three hours, so it would appear that they had few problems reaching their decision.

Overall, we would say that the curative effects of other instructions did their work. The jury understood their function to arrive at a figure for attorney's fees and costs advanced. The record discloses they were justified in their verdict.

## VI.

We have touched somewhat on appellants' claims that appellee had agreed to perform legal services at a continuing rate fixed at the time of employment and that other express agreements were made. Appellants asked that certain instructions let-

tered A, B, and C,[6] which they offered, be given.

In view of the court's granting partial summary judgment for appellee on the matter of liability for attorney's fees and costs expended, there was no need for the jury to determine anew the presence of an express or any other obligation to pay attorney's fees other than the amount. Since no appeal was taken from the summary judgment, we need not consider its validity. We must assume that it was proper.

■ The offered Instruction A was unnecessary as to its elements 1, 2 and 3. Those elements were decided by the court in its summary judgment adjudging liability. Elements 4 and 5 were covered by the court's given Instruction No. 8, supra note 2.

Offered Instruction B was unnecessary for the same reason.

■ Offered Instruction C was improper because its form was too restrictive. As stated in the preamble of the Rules of Professional Conduct for Attorneys at Law:

"[7] A lawyer's responsibilities as a representative of clients, an officer of the legal system and a public citizen are usually harmonious. * * *

"[8] In the nature of law practice, however, conflicting responsibilities are encountered. Virtually all difficult ethical problems arise from conflict between a lawyer's responsibilities to clients, to the legal system and to the lawyer's own interest in remaining an upright person while earning a satisfactory living."

Difficult issues of professional discretion may arise within an ethical framework concerning an attorney's duty as an officer of the court to honor the court's orders and his duty to competently represent his client. Application of this concept, if given the correct circumstances, may prompt an attorney to act within the court's wishes while also indirectly promoting his client's best interests prior to obtaining consent or authority of his client.

■ We note from Instruction No. 3 that appellee asked the jury to return a verdict of $139,874; the jury returned a verdict for $130,938. We will not speculate as to the reason for the difference. The point is that the jury gave some credit to appellants. Obviously appellants were not prejudiced by failure of the trial court to give the instructions requested. The only means available to discover what a verdict embraces is a request for a special verdict form providing a breakdown as to attorney's fees and costs. Appellants did not

6. Instruction A reads as follows:
"In this action, [appellee] has the burden of proving by a preponderance of the evidence the following:
"1. [Appellee] and [appellants] entered into an agreement whereby [appellee] was to represent [appellants].
"2. The terms of the agreement entered into.
"3. That [appellants] breached the agreement entered into between the parties.
"4. That the legal services rendered were necessary, reasonable and proper under the circumstances.
"5. The amount of money owed to [appellee] by [appellants].
"In determining whether an issue has been proved by preponderance of the evidence, you should consider all of the evidence bearing upon that issue, regardless of who produced it."
Instruction B reads as follows:
"An express contract for services may be written or oral. An oral contract for services is as legally binding as a written contract for services.

"In order to find that [appellee] and [appellants] had entered into an express contract you must find the following:
"1. That [appellee] offered to render services to [appellants] based upon an hourly rate[.]
"2. That [appellants] accepted [appellee's] offer to render such services at such hourly rate.
"In the event that you determine that [appellee] and [appellants] had entered into an express contract, then you must find and set the amount of damages sustained by [appellee].
"In the event that you determine that no contract existed between [appellee] and [appellants], then you must find and set the amount due and owing to [appellee] from [appellants]. This amount would be the value of the services rendered as determined by you subtracting payments made to [appellee] by [appellants]."
Instruction C reads as follows:
"The court instructs the jury that [appellee's] law firm may not recover from [appellants] money paid by it to third persons, which money was paid without the consent or authority of [appellants]."

request or offer a special verdict form. They did not object to a general verdict form, so they cannot now be heard to complain. Rule 49, W.R.C.P.

 Appellee's complaint which was filed to initiate this action was one to recover the reasonable value of services rendered and monies advanced for costs associated with the litigation. This was an action for quantum meruit. In an action upon quantum meruit, the plaintiff establishes his case to recover when he introduces evidence of the reasonable value of the services performed. If a defendant contends that an express contract was made fixing the value, he must plead and prove that fact. *Miracle v. Barker*, 59 Wyo. 92, 136 P.2d 678 (1943).

Appellants answered appellee's complaint and entered an affirmative defense stating that an agreement between the parties stipulated that "attorney's fees would be paid primarily by transferring real property to" counsel. The contentions of appellants/defendants were submitted to the court in the form of an instruction,[7] which was given by the court. The contentions basically set up an express agreement, which became an affirmative defense. It was then appellants' burden to prove such agreement by a preponderance of the evidence, which the jury decided was not done.

By Instruction No. 6, the court instructed the jury that appellee had "the burden of proof to discharge by a preponderance of the evidence as to what, if anything, is owed by" appellants to appellee.

There should have been an instruction placing the burden on appellants to prove an express contract. Appellants had the burden to establish a contract, not appellee. Appellee, by pleading, contentions, and proof, was not relying on express contract, but on quantum meruit. Working for an hourly rate is only a measure of worth and does not require an express contract with a client.

## VII.

 Finally, appellants assert as error that an exhibit was mishandled by the court, stating that, after the exhibit was introduced into evidence at appellee's request and the jury was made aware of its contents, the court then ordered the exhibit withdrawn from evidence before appellants could cross-examine with respect to its contents. An issue is not raised for our consideration because appellants neglected to bring the letter to us as a part of the record. As we have noted previously, it is the responsibility of appellants on appeal to assure the presence of any part of the record necessary for consideration. We cannot and will not consider any matter on which the record is silent. *Mentock v. Mentock*, Wyo., 638 P.2d 156 (1981). We observe further that appellants failed to make an offer of proof concerning what would have been developed by the cross-examination. Such failure forecloses this court from considering the consequences. *Valentine v. Ormsbee Exploration Corporation*, Wyo., 665 P.2d 452 (1983).

We can find no reversible error in the trial of this case.

Affirmed.

---

7. Instruction No. 3A reads as follows:

"[Appellants] state that [appellee] was hired for the purpose of representing them in the case of Condict v. Condict. However, [appellants] deny that they owe the amount of attorney's fees and costs as alleged by [appellee]. [Appellants] assert that an agreement was entered into with [appellee] concerning the payment of attorney's fees and that [appellee] has breached that agreement. [Appellants] assert that [appellee] paid certain costs of litigation which were not proper, and should not have been paid. And further, such payments were the bills of third persons. That hourly rates were increased without their knowledge and agreement. [Appellants] contend that it was the agreement between the parties that [appellee] would take land in exchange for attorney's fees if the attorney's fees exceeded the value of land already transferred to [appellee]. Finally, [appellants] contend that the bills submitted by [appellee] were incorrect."