James BIGLEY and Rochelle Bigley, Appellants (Plaintiffs),

v.

Jamie Lyn CRAVEN, Appellee (Defendant).

No. 88–169.

Supreme Court of Wyoming.

Feb. 23, 1989.

Jeffrey A. Tennyson of Robert N. Williams, P.C., Jackson, for appellants.

Ford T. Bussart and Lisa A. Botham of Greenhalgh, Bussart, West & Rossetti of Rock Springs, for appellee.

Before THOMAS, URBIGKIT, MACY and GOLDEN, JJ., and GUTHRIE, J., Retired.

GOLDEN, Justice.

Appellants James and Rochelle Bigley appeal from a jury verdict in their favor awarding James Bigley $9,100 for personal injury damages against appellee Jamie Craven. Bigleys assert the trial court erred in refusing to instruct the jury that if it was unable to apportion the damages between Mr. Bigley's pre-accident and post-accident physical conditions, then it could find Jamie Craven, who caused the accident, to be responsible for the entire damages. We hold the trial court erred and affirm on the issue of liability, reverse on the issue of damages, and remand for a new trial in accordance with this decision.

## FACTS

Before the May 6, 1983, rear-end motor vehicle collision, which gave rise to this action, James Bigley suffered from mild and infrequent symptoms of pain and discomfort caused by degenerative changes in his cervical spine which were the result of both the natural aging process and a 1978 motor vehicle accident. According to Mr. Bigley's testimony at trial, he was in fair condition and had no problems with his neck about a month after the 1978 accident. He further testified that within a few months after the 1978 accident he had resumed most of his pre-accident physical activities. Other than an infrequent stiff neck upon awakening in the morning, he was not limited in his activities before the 1983 accident giving rise to this action. This condition was confirmed by the trial testimony of Meade Davis, M.D., and trial testimony by deposition of J. Charles Rich, M.D.

On May 6, 1983, the Bigleys were occupants of their VW van stopped at a traffic light at an intersection in Rock Springs, Wyoming, when Craven negligently drove her car into the rear-end of the Bigleys' van. This collision injured Mr. Bigley's neck. According to Dr. Rich's testimony, Mr. Bigley's symptoms following the 1983 accident were stiffness and soreness in his neck, numbing sensations into the fourth and fifth fingers of both hands, some muscle tenderness on the right side of his neck, and diminished cervical range of motion. In Dr. Rich's opinion, Mr. Bigley had sustained a fairly severe acceleration-deceleration injury on an already abnormal neck. Dr. Rich explained that as of 1978 Mr. Bigley had cervical degenerative disk disease changes; as of 1983 he noted similar changes between Mr. Bigley's fifth and sixth cervical vertebrae which were "perhaps related to his normal activities," and "not necessarily * * * related to a previous injury." According to Dr. Rich, Mr. Bigley, like other men of his age with degenerative neck changes, is more likely to experience a prolonged period of symptoms following injury, increased tendency to excessive muscle tightness, and a longer recovery period. On cross-examination by appellee's counsel, Dr. Rich clarified that he was not quantifying the amount of injury Mr. Bigley sustained as a result of the 1983 accident, and he testified that the 1978 accident was sufficient to make him more

vulnerable to the 1983 accident. He also stated that he accepted the radiologist's opinion that Mr. Bigley's cervical degeneration increased due to the 1983 accident. On redirect examination, Dr. Rich summarized his views that the 1983 injury aggravated a preexisting condition; Mr. Bigley sustained the super-imposition of an acceleration-deceleration of the cervical spine on a neck that already had evidence of degenerative disk disease; the neck was less well able to tolerate that trauma than someone else's neck might have been; and the symptoms experienced by Mr. Bigley were consistent with those to be expected in that kind of injury.

Dr. Davis' testimony was similar to Dr. Rich's. In Dr. Davis' view, Mr. Bigley had degenerative changes in his neck that were probably aggravated by the 1978 injury, and the degenerative changes were again aggravated and worsened by the 1983 accident. Explaining, Dr. Davis stated, "what we're really trying to distinguish here I think it's a magnitude * * * of his injury as a result of the normal wear-and-tear changes of day-to-day life versus the more sudden and more rapid rate of advances, changes that might incur [sic] from actual injuries on the subject." In his opinion, the 1983 accident caused additional damage to Mr. Bigley's neck that "resulted in the production of symptoms or increased symptoms over and above what he had." When asked on direct examination by Mr. Bigley's counsel whether he could apportion the damages between Mr. Bigley's preexisting condition and the aggravation of that condition caused by the 1983 accident, Dr. Davis answered that Mr. Bigley's present physical limitations of no heavy lifting or long driving periods seem to be related to symptoms as a result of the 1983 accident and those changes probably are permanent. On cross-examination by appellee's counsel, Dr. Davis agreed that in his opinion three conditions existed in Mr. Bigley's neck: (1) natural degenerative condition as a result of the aging process; (2) some degenerative condition as a result of the 1978 accident; and (3) some degenerative condition as a result of the 1983 accident.

Against this evidentiary background, the Bigleys requested the trial court to instruct the jury as follows:

Plaintiffs' Proposed Instruction No. 14

When there is a pre-existing condition, and where trauma aggravates the pre-existing condition, and no apportionment of the disability between that caused by the pre-existing condition and that caused by the trauma can be made, in such case, even though a portion of the present and future disability is directly attributable to the pre-existing condition, the defendant whose act or negligence was the cause of the trauma is responsible for the entire damage.

The trial court refused to give that requested instruction; instead, it instructed the jury as follows:

Instruction No. 15

A person who has a condition or disability at the time of any injury is not entitled to recover damages for the pre-existing condition. However, he is entitled to recover damages for any aggravation of such pre-existing condition directly resulting from the injury.

This is true even if the person's condition or disability made him more susceptible to the possibility of ill effects than a normally healthy person would have been, and even if a normally healthy person would not have suffered any substantial injury.

Where a pre-existing condition or disability is so aggravated, the damages as to such condition or disability are limited to the additional injury caused by the aggravation.

The Bigleys do not dispute the propriety of this given instruction, but contend it did not sufficiently cover their theory of the case in light of the evidence presented in support of that theory. This court has consistently held "that a party is entitled to have a jury instruction upon its theory of the case but only if such theory is supported by competent evidence and a proper request for the instruction is made."

*Short v. Spring Creek Ranch, Inc.,* 731 P.2d 1195, 1199 (Wyo.1987).

Bigleys properly objected to the trial court's refusal to give their requested instruction. W.R.C.P. 51; *Hashimoto v. Marathon Pipe Line Co.,* 767 P.2d 158, 162 (Wyo.1989). Our standard of review for alleged error in jury instructions is:

[A] finding of error is not alone sufficient to reverse; prejudicial error must be found. *Walton v. Texasgulf, Inc.,* Wyo., 634 P.2d 908 (1981). Prejudicial error is never presumed; it must be established by the parties. *Pure Gas and Chemical Company v. Cook* [526 P.2d 986 (Wyo.1974) ]. If it is established that an instruction or instructions had a tendency to confuse or mislead the jury with respect to the applicable principles of law, reversal is proper. 9 Wright & Miller, Federal Practice and Procedure: Civil § 2558, p. 668 (1971); see also, *Marken v. Empire Drilling Company,* 75 Wyo. 121, 293 P.2d 406 (1956).

*Cervelli v. Graves,* 661 P.2d 1032, 1036 (Wyo.1983).

In *Condict v. Whitehead, Zunker, Gage, Davidson & Shotwell, P.C.,* 743 P.2d 880, 885–86 (Wyo.1987), we observed from 1 California Forms of Jury Instruction, Procedures and Instructions § 1.13[3] (1987): "If it appears that giving or refusing to give an instruction was likely to mislead the jury and become a factor in its verdict, then the instructional error is prejudicial and a court should not speculate on what may have been the basis for the jury's verdict."

Mindful of this standard, we now determine whether the trial court's refusal to give the Bigleys' requested instruction was error and, if so, whether that error was prejudicial in the sense which the standard articulates.

Simply stated, the Bigleys assert that, in view of the evidence presented relating to Mr. Bigley's physical condition before and after the 1983 collision, the jury had difficulty in determining the amount of Mr. Bigley's disability to be assessed against Craven because of her fault in causing Mr. Bigley's injuries in the 1983 accident. Specifically, the Bigleys contend that the jury, not the judge, should decide whether Mr. Bigley's disability from the 1983 accident can be segregated from his condition before that accident, based on evidence that reasonably suggests a jury could decide either way. In support of their position, the Bigleys rely on *Newbury v. Vogel,* 151 Colo. 520, 379 P.2d 811 (1963), as their standard bearer, as well as other Colorado decisions [1] and decisions from several other jurisdictions.[2] In *Newbury,* as a result of a motor vehicle collision, the plaintiff, like Mr. Bigley, suffered an acute spinal sprain which was superimposed on a preexisting arthritic condition. *Newbury,* 379 P.2d at 812. As here, some medical testimony held that part of the plaintiff's post-accident disability and condition was attributable to the pre-accident condition and part to the accident, but no one could say how much was due to one or the other. On the other hand, some other medical evidence showed that all of the plaintiff's complaints were due to the pre-accident condition. The trial court gave the jury an instruction quite similar to instruction No. 15 given here and refused to give an instruction similar to Bigleys' requested and rejected instruction here. *Id.* 379 P.2d at 812. On appeal, the Colorado Supreme Court reversed, holding that the plaintiff was entitled to an instruction advising the jury if it could not apportion the plaintiff's disability between the preexisting condition and the trauma

1. *Hylton v. Wade,* 29 Colo.App. 98, 478 P.2d 690 (1970); *Moyer v. Merrick,* 155 Colo. 73, 392 P.2d 653 (1964); *Intermill v. Heumesser,* 154 Colo. 496, 391 P.2d 684 (1964); *Koch v. Stephens,* 37 Colo.App. 561, 552 P.2d 525 (1976), reversed sub nom. *Stephens v. Koch,* 192 Colo. 531, 561 P.2d 333 (1977); *Hildyard v. Western Fasteners, Inc.,* 33 Colo.App. 396, 522 P.2d 596 (1974); *Brittis v. Freemon,* 34 Colo.App. 348, 527 P.2d 1175 (1974); *Brooks v. Reiser,* 483 P.2d 389 (Colo. App.1971).

2. *Matsumoto v. Kaku,* 52 Hawaii 629, 484 P.2d 147 (1971); *Bachran v. Morishige,* 52 Hawaii 61, 469 P.2d 808 (1970); *Kawamoto v. Yasutake,* 49 Hawaii 42, 410 P.2d 976 (1966); *Bushong v. Kamiah Grain, Inc.,* 96 Idaho 659, 534 P.2d 1099 (1975); *Blaine v. Byers,* 91 Idaho 665, 429 P.2d 397 (1967).

caused by the accident, then the defendant was liable for the entire damage resulting from the disability. *Id.* 379 P.2d at 813.

Opposing the Bigleys' view, Craven argues that an injured party is not entitled to a *Newbury*-like instruction unless that party shows that his disability cannot be apportioned based on the evidence presented at trial. In support of her claim, Craven relies principally on *McDonald v. United Airlines, Inc.*, 365 F.2d 593 (10th Cir.1966) and *LaMoureaux v. Totem Ocean Trailer Express, Inc.*, 632 P.2d 539 (Alaska 1981). In *McDonald,* the appellate court affirmed the trial court's refusal to give a *Newbury*-like instruction on a record revealing the plaintiff made no attempt to show impossibility of apportionment. *McDonald,* 365 F.2d at 594. In contrast, Bigleys' evidence was sufficient to present a jury question on whether apportionment was possible. In *LaMoureaux,* the Alaska Supreme Court upheld the trial court's refusal to give a *Newbury*-like instruction on a record containing no evidence that apportionment was impossible.

The *LaMoureaux* court recognized, however, that a case might exist in which the plaintiff, who has presented evidence of his preexisting condition, "may still be confronted with the problem of the inability of the medical experts to determine the amount of aggravation." *LaMoureaux,* 632 P.2d at 545. The court identified *McNabb v. Green Real Estate Co.,* 62 Mich.App. 500, 233 N.W.2d 811, 819 (1975), to be that case and to stand as authority for the principle that the injured party may be entitled to an instruction imposing the entire damages on the wrongdoer where there is evidence that apportionment is impossible. *LaMoureaux,* 632 P.2d at 545. In *McNabb,* the Michigan Court of Appeals, also drawing upon *Newbury,* held that a clear factual basis existed for the trial court's correctly giving the *Newbury*-like instruction. In its holding, the Michigan court said:

> [T]he challenged instruction accurately states the policy of this jurisdiction and was correctly given. It has long been established that a wrongdoer takes an injured person as he finds him, and, that,

if the defendant's wrongful conduct is proved by a preponderance of the evidence to be a proximate cause of the aggravation of a latent disability, he is liable for such aggravation. *Schwingschlegl v. City of Monroe,* 113 Mich. 683, 72 N.W. 7 (1897); 2 Restatement of Torts 2d, § 461 p. 502; 2 Harper and James, The Law of Torts, § 20.3, p. 1127. More significant is the policy of this jurisdiction as to the apportionment of the burden for uncertainty of damages. As the trial court noted in the second emphasized portion, uncertainty as to causation should be resolved in favor of the victim. This policy does not, as defendant claims, remove from a plaintiff the burden of showing that the negligence of the defendant was the proximate cause of the injury. *Schwingschlegl v. City of Monroe,* supra. It merely gives the benefit of any doubt in determining damages to the party whom the jury has found to have been wronged.

*McNabb,* 233 N.W.2d at 820.

Synthesizing these cases, we conclude they can most rationally be reconciled in terms of the evidentiary state of the record in this case. If the record contains conflicting evidence on whether or not apportionment can be made, then a question of fact is presented which the fact finder, not the trial judge, must resolve. In that circumstance, the fact finder must be properly instructed when that is the evidentiary state of the record. *Short v. Spring Creek,* 731 P.2d at 1199.

Turning our attention on the subject of apportionment of damages to the familiar surroundings of our own jurisprudence, we identify *Chrysler Corporation v. Todorovich,* 580 P.2d 1123 (Wyo.1978), and more recently, *Hashimoto,* as instances where this court has discussed this subject, albeit in somewhat different contexts. In *Todorovich,* the plaintiff received back injuries when the motor vehicle he was operating was struck from the rear by a following motor vehicle. During the collision a seat bracket on the plaintiff's seat broke, causing, in the experts' opinions, a lumbar spine

injury more pronounced than and different from that which would have resulted had the seat bracket not failed. In one of its appellate issues, Chrysler claimed the jury instructions were defective in not explaining that Chrysler's liability, as a vehicle manufacturer, was " 'for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the [rear-end] impact or collision absent the defective design.' " *Todorovich*, 580 P.2d at 1130 (quoting *Larsen v. General Motors Corp.* 391 F.2d 495 (8th Cir.1968)). To this claim, we replied that Chrysler's concept assumed the application of an apportionment rule to Mr. Todorovich's injuries. We recognized that if apportionment can be achieved, apportionment assumes that liability can be identified and attributed to contending tort feasors for separate injuries, not for the same injury. Further, we noted "our view that in a case which involves an injury that is not divisible, apportionment * * * cannot rationally be applied." *Id.* We stated that "we rely upon Restatement Torts, 2d § 433A, p. 434 (1965). The injuries sustained by Todorovich are incapable of any logical, reasonable, or practical division." *Id.* at 1130–1131. The cited Restatement section provides:

§ 433A. Apportionment of Harm to Causes

(1) Damages for harm are to be apportioned among two or more causes where

(a) there are distinct harms, or

(b) there is a reasonable basis for determining the contribution of each cause to a single harm.

(2) Damages for any other harm cannot be apportioned among two or more causes.

In comment *a* to this section, we find:

*The rules stated apply also* where one or more of the contributing causes is an innocent one, as *where the negligence of a defendant combines* with the innocent conduct of another person, or with the operation of a force of nature, or *with a pre-existing condition which the defen-dant has not caused, to bring about the harm to the plaintiff.*

Restatement (Second) of Torts § 433A, comment a at 434–35 (1965) (emphasis added).

Further, comment *i* to subsection (2) of the Restatement section, states:

Certain kinds of harm, by their very nature, are normally incapable of any logical, reasonable, or practical division. * * * By far the greater number of personal injuries * * * are thus normally single and indivisible. Where two or more causes combine to produce such a single result, incapable of division on any logical or reasonable basis, and each is a substantial factor in bringing about the harm, the courts have refused to make an arbitrary apportionment for its own sake, and each of the causes is charged with responsibility for the entire harm.

Such entire liability is imposed where some of the causes are innocent * * *. It is imposed where either cause would have been sufficient in itself to bring about the result * * *.

Restatement (Second) of Torts § 433A, comment i at 439–40 (1965).

This authority leads us to Restatement (Second) of Torts § 434 at 447 (1965), which states:

§ 434. Functions of Court and Jury

(1) It is the function of the court to determine

(a) whether the evidence as to the facts makes an issue upon which the jury may reasonably differ as to whether the conduct of the defendant has been a substantial factor in causing the harm to the plaintiff;

(b) whether the harm to the plaintiff is capable of apportionment among two or more causes; and

(c) the questions of causation and apportionment, in any case in which the jury may not reasonably differ.

(2) It is the function of the jury to determine, in any case in which it may reasonably differ on the issue,

(a) whether the defendant's conduct has been a substantial factor in causing the harm to the plaintiff, and

(b) the apportionment of the harm to two or more causes.

Comment *d* to this section states:

> The question whether the harm to the plaintiff is capable of apportionment among two or more causes is a question of law, and is for the decision of the court in all cases. Once it is determined that the harm is capable of being apportioned, the actual apportionment of the damages among the various causes is a question of fact, which is to be determined by the jury, unless the evidence is such that reasonable men could come to only one conclusion.

A decade after *Todorovich* we faced and answered an apportionment of damages question in *Hashimoto*. There, a plaintiff injured in one rear-end collision sought damages from the defendant for injuries the plaintiff received months later in a second rear-end collision not involving the first defendant. We upheld the trial court's refusal to instruct the jury that in a successive impact case the first defendant has the burden to prove and apportion the plaintiff's damages resulting from injuries for which that defendant is responsible or, if that apportionment is not possible, the first defendant may then be liable for all damages, including those resulting from injuries subsequently suffered by the plaintiff. In arriving at that decision we distinguished the successive impact situation there presented and also found in *Bruckman v. Pena*, 29 Colo.App. 357, 487 P.2d 566 (1971), from a preexisting condition scenario, such as presented here. We said:

> We are cognizant, as was the Bruckman court, of the principle that when a tort feasor injures someone with a preexisting condition, he is liable for the total damage when no apportionment between the pre-existing condition and the damage defendant caused can be made. Thus, the defendant must take his victim as he finds him. See *Alexander v. White*, 488 P.2d 1120, 1123 (Colo.App. 1971), where the Bruckman situation is distinguished from a pre-existing condition scenario.

*Hashimoto*, 767 P.2d at 161.

We note that the *Alexander* court relied on *Newbury* in distinguishing the preexist-ing condition situation from the successive impact situation. *Alexander v. White*, 488 P.2d 1120, 1123 (Colo.App.1971).

Based on our review and consideration of the foregoing authorities, we conclude that the trial court's refusal to give the Bigleys' requested instruction was error. The trial court erroneously determined, based on the evidence, that Mr. Bigley's disability was capable of apportionment between his preexisting condition and his post-accident condition. We hold that if, as here, the record contains conflicting evidence on whether or not apportionment can be made, then a question of fact is presented which the jury as fact finder must resolve under proper instructions. Part of those instructions must include the charge that if the jury is unable to apportion the plaintiff's disability between preexisting and accident-caused conditions, then the defendant is liable for the entire disability.

Having found the trial court erred in refusing to give the Bigleys' requested instruction, we must next decide whether that error was prejudicial in the sense which our standard of review articulates. The Bigleys have established that the trial court's refusing to give their requested apportionment instruction was likely to mislead the jury and become a factor in its verdict.

In the face of conflicting evidence on apportionment of damages, the trial court instructed the jury it could award damages only for the aggravation of the preexisting condition, not the preexisting condition itself. Had the jury been properly instructed on this issue, it may have awarded damages for that preexisting condition as well. We will not "speculate on what may have been the basis for the jury's verdict * * *." 1 California Forms of Jury Instruction, Procedures and Instructions § 1.13[3] (1987).

We reverse and remand to the trial court with directions to enter judgment against the defendant on the issue of liability and

to grant a new trial solely on the issue of damages in conformity with the views expressed in this opinion.

Affirmed in part, reversed in part, and remanded with instructions.