578 A.2d 840

Nancy S. SEITES

v.

James McGINLEY.

No. 1753, Sept. Term, 1989.

Court of Special Appeals of Maryland.

Sept. 5, 1990.

Certiorari Denied Dec. 26, 1990.

Patrick J. Massari (Beller & Nelson, on the brief), Washington, D.C., for appellant.

James S. Wilson (Janet S. Zigler and Brault, Graham, Scott & Brault, on the brief), Rockville, for appellee.

Argued before KARWACKI and ROSALYN B. BELL, JJ., and (JAMES S. GETTY, J., Retired, Specially Assigned).

JAMES S. GETTY, Judge, Retired, Specially Assigned.

The appellant herein, Dr. Nancy S. Seites, contends that the trial judge in the Circuit Court for Montgomery County (Messitte, J.) erred in refusing to give an instruction that, if the jury could not apportion damages between those arising

from pre-existing injuries and those related to the automobile accident in question, the defendant should be liable for all such damages. For the reasons hereinafter stated, we affirm the trial judge's refusal to grant the requested instruction.

Appellant's account of the accident is that on the morning of April 10, 1985, the appellee, James McGinley, collided with the rear of her car on the Washington Beltway. The appellee testified that he was traveling approximately 55 miles per hour while maintaining a four to five car length distance from the car in front of him when a car allegedly swerved in front of him from the lane to his right and continued toward the median strip. As this situation was unfolding, the drivers ahead suddenly began to apply their brakes. Appellee slammed on his brakes and swerved to his left, striking the rear of appellant's vehicle. The appellant also applied her brakes when she realized that the vehicles ahead of her were stopping rather than slowing. Only a few seconds elapsed from the time appellant applied her brakes until the collision occurred.

After the accident appellant said she thought she was okay, but that she had been in therapy for problems with her back and she felt back pain from the exertion of "standing on the brake" to stop her car. She drove from the scene and that afternoon went to an area hospital where she was examined and discharged after being given a sprain and strain sheet to alleviate her discomfort.

Appellant's pre-existing condition included substantial treatment for physical and emotional problems. In the eleven months preceding the accident she had undergone over 100 physical therapy treatments related to myofascial pain syndrome involving severe neck and back pain. She was also being seen by a psychologist due to her difficulty in adjusting emotionally to the restrictions imposed by her recurring pain and her slow response to chronic pain treatment.

## The Trial

The jury returned a verdict for the appellee which, appellant contends, resulted solely from the refusal to give her requested instruction that would have enabled the jury to consider fairly the conflicting medical testimony and conclude that appellee was liable for her entire disability if apportionment was not ascertainable.

The testimony relating to aggravation of a pre-existing injury included the following: Dr. Patricia Love, a rheumatologist, testified that appellant's pain was exacerbated following the accident. Based upon a graduated pain scale from 0 to 4, Dr. Love stated that appellant's worsening after the accident went from grade +2 to a grade 4. The witness did not testify whether the pain could be apportioned between the pre-existing condition and appellant's post-accident level of pain. As of May 13, 1986, Dr. Love believed appellant could return to work "within 4 to 6 weeks." That did not happen, according to the witness, "because we weren't able to improve her to a point where she could and also because we felt that her emotional condition was in impact." Dr. Love first saw appellant on November 20, 1984, as an emergency referral from another physician. The history taken from the patient at that time indicated that she was in good health until May, 1984, when she experienced back pain while jogging. The severe neck and back pain that developed over the next few months resulted in a diagnosis by appellant's treating physician, Dr. Alicia Hastings, of myofascial pain syndrome and leg length discrepancy.

Dr. Richard N. Edelson, a neurologist, testified in appellant's case that his evaluation was performed at the request of appellant's disability insurance carrier in September, 1988. The witness testified that appellant was totally disabled due to two factors, namely: "severe musculoskeletal disturbance (myofascial pain syndrome) and the other problem being her psychiatric problems." Later in his testimony, Dr. Edelson testified that "the automobile accident that she had in April of 1985 was the cause of her disability."

Again, in response to a question, Dr. Edelson said, "I felt that her disability was due to her myofascial pain syndrome and concomitant depression ... that the accident was the major precipitating factor for this disability...." On cross-examination the witness admitted that he found appellant to be psychiatrically dysfunctional and that the main thrust for her treatment was psychological.

Appellant's third expert witness, Dr. Michael Smith, a clinical psychologist, had treated appellant since August, 1984, for pain in her neck, shoulder, and back. Shortly before the accident, appellant allegedly reached maximum improvement for her adjustment disorder. According to Dr. Smith, the worsening of appellant's physical condition and her depression after April, 1985, were attributable to the accident. The witness was not asked whether he could apportion damages between pre-existing and post-accident conditions. On cross-examination, Dr. Smith acknowledged that he evaluated appellant's adjustment disorder with psychological factors affecting physical illness as "severe" prior to the April, 1985, accident. Later in 1985, according to the witness, appellant was diagnosed as having sustained a major depression attributable to:

A.  growing belief that reconciliation with her husband is unlikely.

B.  reaching 30 years of age without the family she expected to have or a mate.

C.  continuing to be off work and essentially housebound.

D.  losing hope that there will ever be an improvement in her physical condition or a reduction in pain.

The appellee called three medical experts: Dr. Robert Gordon, an orthopedist; Dr. Bruce Ammerman, a neurologist; and Dr. Allan Berger, a psychiatrist. All three were of the opinion that appellant did not sustain any permanent injury resulting from the April, 1985, accident; that there was no exacerbation of her condition due to the accident;

and that on review, the medical records before and after the accident remained essentially unchanged.

The trial court instructed the jury on the law of negligence, proximate cause, and burden of proof. The court gave the following instruction relating to apportionment: [1]

Now you were advised that someone may recover for the aggravation of a pre-existing injury including a pre-existing psychological injury or condition. But if a party, in this case a defendant, is the cause of the aggravation of a pre-existing injury, then the party that is the cause is only liable for that portion that they aggravate; they are not liable for the entire amount, they are liable for that portion that they would aggravate. And so, the burden of proof would be upon the plaintiff in this case to demonstrate to you what portion of the injury, if any, was aggravated by this incident as opposed to what was pre-existing.

No reported Maryland appellate decision has considered the instruction suggested by the appellant herein. The appellant relies upon *Bigley v. Craven*, 769 P.2d 892 (Wyo. 1989), which held the instruction to be proper. Bigley appealed from an award of $9,100 for personal injuries sustained in a rear-end motor vehicle collision. Prior to the accident, Bigley suffered from mild and infrequent pain caused by degenerative changes in his cervical spine resulting from the natural process of aging and a 1978 motor vehicle accident. He testified that within a few months of the 1978 accident he had resumed most of his pre-accident physical activities. Medical testimony established that Bigley's cervical degeneration increased due to the 1983 accident, thereby aggravating a pre-existing condition.

---

**1.** Preliminarily, the court stated that it would instruct the jury that if it could not apportion the damages between the pre-existing disability and the post-accident condition, the defendant was liable for the entire disability. The court reconsidered and gave the instruction above and the appellant objected.

Bigley's counsel asked a physician if he could apportion the damages between Bigley's pre-existing condition and the aggravation of that condition caused by the 1983 accident. Rather than a "yes" or "no" answer, the witness responded that three conditions existed in Bigley's neck: (1) natural degenerative condition from aging; (2) some degeneration resulting from the 1978 accident; and (3) some degeneration from the 1983 accident.

The trial court refused Bigley's requested instruction to the effect that where no apportionment can be made the defendant whose negligence caused the trauma is responsible for the entire damage. Instead, the court's instruction advised the jury that where a pre-existing condition is aggravated, the damages are limited to the additional injury caused by the aggravation.

Bigley did not dispute the propriety of the instruction given, but contended it did not sufficiently cover his theory of the case in light of the evidence. The Wyoming Supreme Court agreed with Bigley and reversed on the damage issue. The Court held that if the record contains conflicting evidence on whether or not apportionment can be made, a question of fact is presented which the fact-finder must resolve under proper instruction including the charge that if the jury is unable to apportion between pre-existing and accident-caused conditions, then the defendant is liable for the entire disability.[2]

We note that *Bigley* is distinguishable from the case before us for several reasons, including the fact that in *Bigley* liability was established since the jury returned a verdict for $9,100.00. In the present case, the jury returned a verdict for the defendant. That verdict may well have resulted from the jury concluding that appellant did not meet her burden of establishing that her injuries were

---

**2.** Other jurisdictions in accord with *Bigley* include: *Matsumoto v. Kaku,* 52 Haw. 629, 484 P.2d 147 (1971); *Bushong v. Kamiah Grain, Inc.,* 96 Idaho 659, 534 P.2d 1099 (1975); and *McNabb v. Green Real Estate Co.,* 62 Mich.App. 500, 233 N.W.2d 811 (1975).

related to the accident. Three medical experts stated unequivocally that her condition was not exacerbated by the accident. The jury may have determined that appellee was not negligent in that he was confronted with a sudden emergency, as defined by the court, and responded as a reasonably prudent driver under the circumstances. An indication that the jury was concerned with the negligence aspect of the case is borne out by a note from the jury asking "Does fault or partial fault legally imply negligence?" After being advised to review the instructions given earlier, the jury returned a defendant's verdict.

The medical experts called by the appellee conceded that appellant may have sustained minimal soft tissue sprain from the accident which would have cleared within several months after the accident, and that such injuries would not be an aggravation of her pre-existing condition. On this testimony the jury could have awarded some damages. The fact that no damages were awarded buttresses the argument that the jury found no liability by the appellee.

A second distinction between *Bigley* and the current case is that in the former the medical witness was asked if the pre-existing and post-accident injuries could be apportioned. The answer was not entirely responsive in that the witness listed three causes for the plaintiff's current condition. The *Bigley* court apparently considered the response as a "no." In the case *sub judice* none of appellant's witnesses were asked if the injuries could be apportioned. The appellant herein makes a quantum leap from the fact that her car was struck from the rear to a conclusion that she is entitled to damages because three of six expert witnesses concluded that her present condition emanated from the accident. She then seeks to avoid the consequences of a defendant's verdict claiming that the jury was unable to apportion damages despite the fact that she elicited no testimony to create that issue.

In *LaMoureaux v. Totem Ocean Trailer Express*, 632 P.2d 539 (Alaska 1981), the Alaska Supreme Court upheld the trial court's refusal to give the instruction suggested by

the appellant therein on a record revealing the plaintiff made no attempt to show impossibility of apportionment. A like result was reached in *McDonald v. United Airlines, Inc.*, 365 F.2d 593 (10th Cir.1966).

We do not suggest that the instruction sought by the appellant is an incorrect statement of the law, or that it should never be given. In fact, Restatement (Second) of Torts, § 433B, states:

> The burden of proof that the tortious conduct of the defendant has caused the harm to the plaintiff is upon the plaintiff.

Two exceptions are noted to the general rule:

> (1) Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.
>
> (2) Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.

Neither of the above exceptions shifting the burden of proof to the defendant involves cases of a pre-existing injury.

In this case there is no gray area as to the degree of disability between a pre-existing condition and a subsequent accidental injury. Three experts testified that appellant's condition was exacerbated by the accident. Three other experts concluded that the accidental injury did not have any permanent impact upon the pre-existing condition. None were asked if the alleged worsening of appellant's condition could be apportioned. The court, therefore, properly left the matter to the jury to decide in the same manner as it would determine an allowance for pain and suffering, emotional distress, or any other imprecise element of dam-

age.  We perceive no error and decline to address whether Maryland ought to adopt the instruction sought by appellant, except to say that, on the facts of this case, the trial judge did not err in refusing to give the suggested instruction.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.